851 A.2d 540

**Myoung PAEK t/a Lanham Inn**

**v.**

**PRINCE GEORGE'S COUNTY BOARD OF LICENSE COMMISSIONERS.**

**No. 100, Sept. Term, 2003.**

Court of Appeals of Maryland.

June 10, 2004.

584

Russell W. Shipley (Dennis Whitley, III, Shipley & Horne, P.A., Largo, on brief), for petitioner.

Edmond B. O'Connell, Upper Marlboro, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE, JOHN C. ELDRIDGE, (retired, specially assigned), JJ.

CATHELL, J.

This case concerns the March 14, 2002 decision by the Prince George's County Board of License Commissioners (the "Board"), respondent, to sanction Myoung Paek, petitioner, who trades as the "Lanham Inn" on Lanham–Severn Road in the Lanham section of Prince George's County, for his actions in offering adult entertainment in the form of topless dancing at the Lanham Inn *without first obtaining Board approval.* Petitioner, on April 2, 2002, filed an action for judicial review of the Board's decision in the Circuit Court for Prince George's County. On October 30, 2002, the Circuit Court issued a memorandum opinion and order reversing the Board's decision. The Circuit Court found that the Board exceeded its statutory authority "to authorize or deny live entertainment" because it was "discriminat[ing] between types of live entertainment without clear, ascertainable standards . . . . ," and further stated that, "the Board, for no apparent reason other than its distaste for the type of entertainment being offered, banned topless dancing." As to the present case,[1] the Circuit Court appears to have misunderstood the status of the administrative proceedings. As far as this record reflects, the Board still has not banned topless dancing at the Lanham Inn. This misperception was later discussed by the Court of Special Appeals in its unreported opinion.

As indicated, the Board then filed a timely appeal to the Court of Special Appeals and, on September 26, 2003, in an unreported opinion, the intermediate appellate court reversed the judgment of the Circuit Court. Petitioner filed a Petition for a Writ of Certiorari to this Court and, on December 18,

---

1. The case *sub judice* was consolidated for purposes of argument in the Circuit Court with another similar case originating in Prince George's County. That other case was not the subject of the Petition for Certiorari which we granted here.

2003, we granted the petition. *Paek v. License Commissioners,* 378 Md. 617, 837 A.2d 928 (2003). Petitioner presents two issues for our review:

"I.   Whether the Court of Special Appeals erred as a matter of law and fact when it determined that the Board of License Commissioners' general and broad standards for regulating various types of entertainment were not applied in an arbitrary and capricious manner, thus violating applicable due process requirements."

"II.   Whether the Court of Special Appeals erred as a matter of law and fact when it determined that the Prince George's County Board of License Commissioners did not exceed the powers delegated to it by Article 2B when it placed a restriction on [petitioner's] alcohol beverage license prohibiting adult entertainment at his business establishment." [Alteration added.]

We shall hold that the Board's action requiring petitioner to appear before the Board, for it to decide whether he could offer adult entertainment at his licensed establishment, was not an arbitrary and capricious action violating due process requirements. The Board justifiably considered petitioner's decision to offer adult entertainment at the Lanham Inn to be a significant change in the use of the premises and such a change was required to first be approved by the Board. The fine given to petitioner as a result of his continued offering of adult entertainment *without first obtaining Board approval* was a lawful action under both Article 2B of the Maryland Code and the relevant local Board rules and regulations.

## I.  Facts

Petitioner is the owner and proprietor of a restaurant known as the Lanham Inn, which is located in Lanham, Maryland. He has operated this business for approximately seventeen years and is the principal licensee of a Class B+, Beer, Wine and Liquor License granted by the Board, a license that authorizes the keeping and sale of alcoholic bever-

ages at the Lanham Inn premises for both on and off-premises consumption.

In May 2001, petitioner asked the Board's permission to make renovations to the Lanham Inn premises in an attempt to modernize his business. These renovations included the addition of a stage area for the purposes of offering "live" entertainment to the patrons of the Lanham Inn. This request was approved by the Board without a hearing in a letter dated December 14, 2001.

Prior to the Board's approval of the stage area, petitioner had also asked the Board for approval to create, by partition, an additional room on the premises. Before considering this alteration, however, the Board requested that petitioner attend a hearing on January 2, 2002 to discuss the proposed new room. At this hearing, Board members inquired about the type of entertainment that petitioner was intending to offer at the Lanham Inn. Petitioner responded that he intended to offer all forms of legal entertainment, including, but not limited to, karaoke, a disc jockey and live bands. When questioned by the Board about any intentions he may have had to offer forms of adult entertainment, *i.e.*, topless dancing or "go-go girls," petitioner stated that he had not made a final decision with regard to offering that form of entertainment. Board members then stated that no such adult entertainment would be permitted at the Lanham Inn *without first being approved by the Board.*

On January 9, 2002, only a week removed from the Board hearing, petitioner began offering adult entertainment, in the form of topless dancing, at the Lanham Inn. Before this date, Board inspectors had been alerted of the planned adult entertainment after viewing advertising fliers promoting "topless dancing" at the Lanham Inn. On January 9th, the inspectors went to the premises and witnessed topless dancing taking place.[2] At that time, the inspectors served petitioner with a

---

**2.** Md.Code (1957, 2001 Repl.Vol.), Art. 2B, § 15–112(r)(3)(i) provides, in pertinent part, that inspectors for the Board in Prince George's

notice charging him with, *inter alia,* significantly changing the mode of operation of the premises *without Board approval.* Subsequently, an inspector delivered a cease and desist order requiring that petitioner cease from offering all forms of adult entertainment on the premises without first obtaining permission from the Board to allow such mode of operation on the premises. Petitioner did not abide by that order, and instead continued to provide adult entertainment without seeking approval from the Board. Petitioner was thereafter summoned to appear at a hearing before the Board on March 6, 2002, to show cause as to why he should not be found to be in violation of certain Board rules and the cease and desist order.

At the hearing on March 6, 2002, the Board heard testimony from petitioner and two employees of the Lanham Inn, as well as from three Board inspectors who had witnessed the topless dancing. On March 14, 2002, the Board issued a written decision finding that petitioner significantly altered his mode of operation without permission and that he ignored a valid cease and desist order from the Board. The Board, in light of these findings, fined petitioner $5,000 and directed that he cease offering adult entertainment at the Lanham Inn *without first obtaining Board approval to do so.* On April 2, 2002, petitioner filed a petition for judicial review in the Circuit Court for Prince George's County. The real issue before the Circuit Court, therefore, was not whether the Board had arbitrarily disapproved topless dancing but whether its approval was necessary in the first instance. The trial court incorrectly adopted the position that the Board had arbitrarily rejected topless dancing at the Lanham Inn, when in fact, the Board's action had been limited to insisting that petitioner seek the Board's approval.

## II. Standard of Review

Upon judicial review of the decisions of alcoholic beverage licensing boards, our scope of review is determined by

County "shall ... [h]ave the duty of visiting and inspecting every licensed premises periodically...."

Md.Code (1957, 2001 Repl.Vol.), Art. 2B § 16–101(e)(1)(i)[3]:
"Upon the hearing of such appeal [judicial review], the action of the local licensing board shall be presumed by the court to be proper and to best serve the public interest. The burden of proof shall be upon the petitioner to show that the decision complained of was against the public interest and that the local licensing board's discretion in rendering its decision was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or that such decision was beyond the powers of the local licensing board, and was illegal." [Alteration added.]

*See Board of License Commissioners for Charles County v. Toye,* 354 Md. 116, 121, 729 A.2d 407, 409 (1999); *Baltimore County Licensed Beverage Association, Inc. v. Kwon,* 135 Md.App. 178, 185–86, 761 A.2d 1027, 1031 (2000). Our review of the Board's decision is the same as that of the intermediate appellate court and the circuit court. Therefore, if the Board's decision was supported by substantial evidence, and if it committed no error of law, we must reverse the circuit court and affirm the Board's decision. If the Board's decision was not supported by substantial evidence, or if it did commit an error of law, we must affirm the circuit court. In addition, we can remand the proceedings to the Board if necessary. *See* § 16–101(e)(4)(ii).

### III. Discussion

Article 2B of the Maryland Code ("Article 2B") comprehensively regulates the manufacture, sale, distribution, transportation and storage of alcoholic beverages in this State. *See Dundalk Liquor Co. v. Tawes,* 201 Md. 58, 65, 92 A.2d 560, 563 (1952) (stating that " 'In the field of regulatory law, more attention has perhaps been given by legislatures to the control and management of the liquor business than of any other traffic. . . .' ") (quoting *Miller v. State,* 174 Md. 362, 371, 198

---

**3.** Hereinafter, except where otherwise indicated, all statutory references are to Md.Code (1957, 2001 Repl.Vol.), Art. 2B, §§ 1–101 et. seq.

A. 710, 715 (1938)). The stated purpose of Article 2B is "to obtain respect and obedience to law and to foster and promote temperance." Art. 2B, § 1–101(a)(1). It is further stated that:

> "[i]t is the legislative intent that the policy will be carried out in the best public interest by empowering ... the various local boards of license commissioners and liquor control boards ... with sufficient authority to administer and enforce the provisions of this article.... The restrictions, regulations, provisions and penalties contained in this article are for the protection, health, welfare and safety of the people of this State."

Art. 2B, § 1–101(a)(2)–(3).

Section 16–301 (a) of Article 2B vests "full power and authority [in local boards of license commissioners] to adopt such reasonable rules and regulations as they may deem necessary to enable them effectively to discharge the duties imposed...." Art. 2B, § 16–301(a) (alteration added). As this Court has stated, however, "rules and regulations adopted by an administrative agency must be reasonable and consistent with the letter and spirit of the statute under which the agency acts." *Sullivan v. Board of License Commissioners for Prince George's County,* 293 Md. 113, 121, 442 A.2d 558, 563 (1982); *see also Mayor and City Council of Baltimore v. William E. Koons, Inc.,* 270 Md. 231, 310 A.2d 813 (1973); *Comptroller of Treasury v. M.E. Rockhill, Inc.,* 205 Md. 226, 107 A.2d 93 (1954). Of particular relevance to the case now before this Court is the language found in § 8–217(a)(4) of Article 2B [4], which states, in pertinent part:

> "In Prince George's County, in addition to the other powers and duties conferred upon them, the Board of License Commissioners ... may prescribe rules and regulations concerning alterations and additions to any licensed premises and the use thereof...."

---

4. Title 8 of the Act, entitled "Local Licenses and License Provisions," concerns, at subtitle 2, "Local Jurisdictions."

Acting in accordance with § 8–217(a)(4), the Board has adopted local rules and regulations in order to administer and enforce Article 2B. Board Rule 37, entitled "Alterations and Additions," states, in pertinent part:

"A.  No license holder shall make any alteration or addition on a licensed premise or change the manner in which alcoholic beverages are dispensed without first obtaining permission from the Board."

. . .

"D.  In the event a licensee decides to significantly alter the mode of operation and the format of presentation of alcoholic beverages to the public from that contained in the original application approved by the Board at the time of issuance of the license, such change must first be presented to the Board for approval. Changes in the mode of operation would include entertainment, alteration of physical premises, presentation of food, alcoholic beverages, seats, physical environment both inside and outside of the licensed premises. The intent of this section is that when a licensee significantly deviates from the original application, as issued, the changes in the mode of operation must be reviewed so consideration can be given to the testimony presented on the original application by the parties of record so as to have assurances that the best interest of the public is accommodated and the operation of the business to be conducted under the license does not adversely impact or unduly disturb the community and further that it is harmonious to the peace, health, welfare, and safety of the residents of Prince George's County."

### A. Propriety of Board Rule 37(D)

Petitioner contends that Board Rule 37(D), while it "arguably may be a constitutionally acceptable standard for determining a licensee's allowable form of entertainment . . . remains a broad standard which the Board has applied in an

arbitrary manner in the instant case." To support his argument, petitioner points to the Board's decision, without a hearing,[5] to allow an alteration at the Lanham Inn so as to provide a stage for live entertainment generally. He argues that, in light of this approval, the Board acted arbitrarily in ruling that a hearing would be required before a decision would be made as to whether the licensed premises could be used for adult entertainment. Petitioner posits that "[t]he only logical explanation for such an inconsistent application of Board Rule 37(D), is that the Board has a preconceived notion that adult entertainment is detrimental to the health[,] safety and welfare of the residents of Prince George's County while karaoke, live bands and disc jockeys are not," and that such inconsistent application of Board rules "violates the principle of due process," which prevents the Board from "reaching consistent and fair decisions."

As noted, *supra*, both Article 2B, particularly § 8–217(a)(4), and Board Rule 37(D) authorize the Board to decide whether it is in the public interest for a liquor license to remain in force for a licensed premises where there has been an alteration in the mode of operation of the premises, including a significant change in how the premises are being used. As stated in Board Rule 37(D), the intent of having such a review hearing is to assure that "the best interest of the public is accommodated and the operation of the business to be conducted under the license does not adversely impact or unduly disturb the community and further that it is harmonious to the peace, health, welfare, and safety of the residents of Prince George's County." Such review is clearly acceptable in a constitutional sense, and we so held in the case of *Sullivan v. Board of License Commissioners*, 293 Md. 113, 442 A.2d 558 (1982). In that case, the holder of a license to sell alcoholic beverages sought judicial review of a decision of the Board of License Commissioners for Prince George's County denying an application to construct and operate a drive-in window for

---

**5.** The issue in the present case is whether the Board's *approval* is necessary. The Board approved the stage.

the sale of packaged alcoholic beverages on the licensed premises. The question then before this Court was whether the Board employed constitutionally acceptable definite standards in situations involving applications to change the nature of the operation of a licensed premises.[6] In holding that the standards were acceptable, we stated:

"It is implicit in the rule . . . that in passing upon the merits of a Rule 46 [7] application, the standard governing the Board's determination is whether the proposed change to the licensed premises is in the interest of public accommodation and is consistent with the need to protect the peace, safety and welfare of the community. *As broad as this standard may be, we think it comports with due process requirements even though not accompanied by a specific delineation of the elements and factors required to be weighed and considered by the Board in passing upon the application."*

*Sullivan,* 293 Md. at 123–24, 442 A.2d at 564 (emphasis added) (footnote added).

Like former Board Rule 46, which was at issue in *Sullivan,* a determination under Board Rule 37(D) is made subsequent to a finding that takes into account public accommodation and "the peace, health, welfare, and safety of the residents of Prince George's County." Therefore, the constitutionally acceptable standard once found by this Court to be "implicit" in former Board Rule 46 (now Board Rule 37(A)) has been made *explicit* in the language of Board Rule 37(D). We continue to agree with the conclusion reached by this Court in *Sullivan, i.e.,* that the Board's discretion in regulating the use of a

---

6. Section 38(a)(5) of Article 2B, which was in effect at the time of the *Sullivan* case, has since been replaced by § 8–217(a)(4). The two subsections are virtually identical.

7. Rule 46, which has subsequently been replaced by Board Rule 37(A), stated:

"No license holder shall make any alteration or addition on a licensed premise or change the manner in which alcoholic beverages are dispensed without first obtaining permission from the Board."

licensed premises under the standards such as those found in Board Rule 37(D), or a rule substantially similar to it, is both constitutionally permissible and consistent with the statutory framework of Article 2B. Petitioner attempted to circumvent Board Rule 37(D) by adding topless dancing as entertainment at the Lanham Inn prior to obtaining Board approval. The January 2, 2002 Board hearing to discuss petitioner's planned room partition is especially telling. As noted earlier, when the Board became suspicious that petitioner was planning to begin offering adult entertainment at the Lanham Inn, members of the Board specifically asked petitioner if this was his plan. Petitioner stated that he had not yet decided. One week later, on January 9, 2002, however, petitioner began offering topless dancing at his establishment. Advertising flyers had been distributed prior to this date. Interviews with prospective dancers also had been conducted contemporaneous to the Board hearing. In light of such circumstances, it appears that it was highly unlikely that petitioner "had not made a final decision" as to whether he would offer adult entertainment at the Lanham Inn when he appeared before the Board on January 2, 2002.

Petitioner's contention that it is constitutionally impermissible for the Board to approve of certain forms of entertainment and reject others is also misplaced. First and foremost, petitioner ignores the fact that the action of the Board, in its decision to fine him for offering adult entertainment without first obtaining Board approval, does not evidence a *per se* policy disfavoring any forms of adult entertainment, be it topless dancing, bottomless dancing, or otherwise, at licensed establishments.[8] Nothing in Article 2B, as far as the record reflects, nor within the Board's rule-making authority, ad-

---

8. The Circuit Court, in its decision, apparently viewed the Board's decision as akin to a ban on topless dancing in Prince George's County. We do not agree. It was established by the Board at oral argument, and conceded by petitioner, that the Board has in fact approved of adult entertainment in licensed establishments within Prince George's County in the past and nothing in the record of this case establishes that such a ban is occurring now.

dresses such a policy. *See Sullivan,* 293 Md. at 124, 442 A.2d at 564. Petitioner's fine was the logical result of his complete indifference to abiding by Board Rule 37(D) and first appearing before the Board regarding his desire to offer adult entertainment at the Lanham Inn. This is not an instance in which the Board prohibited a specific type of entertainment. The Board never reached the question of whether changes should be approved because petitioner, by his actions, circumvented the orderly process of approval provided by Board Rule 37(D).

■ Petitioner also argues that "the Board waived any opportunity to restrict specific forms of entertainment when it chose to approve [his] request for an addition of a stage for live entertainment without a hearing." This contention is patently wrong. To state that the very Board statutorily charged with regulating businesses that sell alcoholic beverages, after approving petitioner's request to erect a stage for the purposes of "live" entertainment, waived any further power of regulation over what form of entertainment actually occurred on the licensed premises, in essence allowing for petitioner to have *carte blanche* control over the kinds of entertainment he could offer at the Lanham Inn free of all oversight by the Board, is absurd. The Board waived nothing. When the Board acted on petitioner's request to erect a stage, its reasoning behind not holding a public hearing was for the simple reason that petitioner's application gave it no reason to believe that there would be a change in the use of the premises that might affect the "public interest" as is meant by § 8–217(a)(4) of Article 2B and require Board consideration (and a hearing if necessary) on whether it would "adversely impact or unduly disturb the community" under Board Rule 37(D).[9] It was only when petitioner asked the Board for

---

9. At the March 6, 2002 show-cause hearing, Board Chairman Franklin D. Jackson stated that "the Board had information from its chief inspector at the time [of the stage approval] that the purpose of the stage was for karaoke, live band, country music, that type of entertainment ... and at no time was it presented by [petitioner] that the renovation or building of the stage was for the purpose of topless

approval for a room partition, that the Board questioned whether petitioner's desire to alter his premises was related to a desire by petitioner to offer adult entertainment at the Lanham Inn. This proposed partition, coupled with the already approved stage area, made such an inquiry reasonable.

■  The change in the use of the Lanham Inn—it went from being known generally as a "pizza place" to an establishment offering topless dancing—was a significant change in the "mode of operation" of the Lanham Inn.[10] Substantial evidence was presented to the Board by the inspectors to support the Board's finding that petitioner violated Board Rule 37(D) by offering topless dancing, a highly sexualized form of entertainment, prior to obtaining Board approval. The Lanham Inn had, up until then, primarily existed as a restaurant. *See Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 529–30, 836 A.2d 655, 667 (2003) (stating that " '[s]ubstantial evidence' has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ") (quoting *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.,* 369 Md. 439, 451, 800 A.2d 768, 775 (2002)) (alteration added). Therefore, the Board's decision not to hold a hearing on the stage application and its later decision that approval (and a hearing) would be necessary on an application to alter the use of the premises to include topless dancing were not made

dancing." He further stated that "the Board never acts on a renovation request without sending someone from its inspection staff to talk to the licensee or to call the licensee" in order to ascertain the reason for the renovation.

10.  That the offering of adult entertainment was considered to constitute a significant change in the "mode of operation" of the Lanham Inn was made lucidly clear by the statements of Board Chairman Jackson at the March 6, 2002 show-cause hearing:

"It's not a change in the mode of operation to play blue grass music. A change in the mode of operation is all of a sudden I can't go into Lanham Inn anymore if I'm 17 years old, or 18 years old, or 19 years old, I have to now be 21 years old. All of a sudden the type of entertainment is not karaoke or country music, or a live jazz band, but it's topless dancers."

under the same circumstances, were *not inconsistent*, and were not arbitrary or unreasonable.

## B. Authority of the Board under Article 2B

Petitioner states that through Article 2B, § 10–405, entitled "Nudity and sexual displays," the legislature has directed that certain counties, not including Prince George's County, shall revoke an establishment's liquor license if, after a hearing, any certain enumerated adult entertainment activities are found to have taken place on the premises.[11] Petitioner argues that Prince George's County's absence from § 10–405 is proof that the Board cannot regulate any specific form of entertainment offered at any licensed establishment.

The absence of Prince George's County as a jurisdiction covered by § 10–405 does not, as petitioner contends, deprive the Board of any power to regulate an alteration in the mode of operation of a licensed establishment. Rather, it means only that in Prince George's County, unlike in those counties named in § 10–405, the revocation of a liquor license *is not the required consequence* of the presentation of adult entertainment as described in § 10–405. In *Coalition for Open Doors v. Annapolis Lodge*, 333 Md. 359, 635 A.2d 412 (1994), we stated that a somewhat similar type (it did not involve adult entertainment) of state exemption " 'amounts to no regulation at all and accordingly leaves the field open for regulation at the local level.' " *Id.* at 381, 635 A.2d at 423 (quoting *City of Baltimore v. Sitnick*, 254 Md. 303, 324, 255 A.2d 376, 385–86

---

11. The counties to which § 10–405 does apply are the following: Anne Arundel County, Calvert County, Caroline County, Carroll County, Cecil County, Charles County, Dorchester County, Frederick County, Garrett County, Harford County, Kent County, Queen Anne's County, St. Mary's County, Washington County (with exceptions), Wicomico County, and Worcester County. Section 10–405(a)(1)–(16). The activities prohibited include employees whose attire exposes "any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;" acts of, or acts which, simulate "sexual intercourse, masturbation, sodomy, bestiality, oral copulation," touching certain areas of the body, certain displays of body areas, topless dancing and numerous certain other live and mechanical or video taped activities.

(1969)). The facts in *Annapolis Lodge* involved an ordinance enacted by the City of Annapolis requiring a private club applicant for a liquor license to complete an affidavit stating that it does not discriminate in its membership practices. A private club argued that such an ordinance conflicted with the state public accommodations law, which exempted private clubs from its application. This Court stated, however, that the state public accommodations law "does not *permit* discrimination by private clubs. It simply excludes private clubs from the coverage of the state law," and held that there was no conflict between the local ordinance and the state legislation. *Annapolis Lodge*, 333 Md. at 383, 635 A.2d at 423. In the case *sub judice*, § 10–405 does not permit adult entertainment to occur unfettered in Prince George's County. It simply excludes licensed establishments that offer certain types of adult entertainment in Prince George's County from having their liquor licenses *automatically* revoked.

█ The action of the Board in fining petitioner $5,000 for his violation of Board Rule 37(D) was entirely within the legal authority of the Board. In *Board of Liquor License Commissioners for Baltimore City v. Hollywood Productions, Inc.,* 344 Md. 2, 684 A.2d 837 (1996), this Court explained that Article 2B confers on all liquor boards the power to, in appropriate circumstances, sanction a licensee's noncompliance with Article 2B. These sanctions, in general, are: monetary fines, license suspension, and license revocation. *See Hollywood Productions,* 344 Md. at 15, 684 A.2d at 844. We further stated that certain local liquor boards are expressly granted additional sanction powers and enforcement tools and that the "elaborate statutory scheme suggests a specific, rather than broad, delegation of authority to the liquor boards and contradicts the notion that restrictions, penalties, and sanctions may be fashioned on an *ad hoc* basis." *Id.* at 16, 684 A.2d at 844 (noting that an exception exists, however, where the licensee "consents and agrees to a reasonable restriction").

Section 16–507 of Article 2B discusses the "Local penalties" allowed for violations of the article. Section 16–507(r),

which applies to Prince George's County, established at the time of petitioner's violation that:

"In Prince George's County the Board of License Commissioners may impose a fine of not more than $5,000 in lieu of or in addition to suspension or revocation of a license for any violation that is cause for suspension or revocation under the alcoholic beverage laws affecting Prince George's County." [12]  [Footnote added.]

As we discussed, *supra,* the fact that petitioner began offering adult entertainment at his establishment, thereby altering the "use" of the premises, without first obtaining Board approval, as required by Board Rule 37(D), was a direct violation of not only Board Rule 37(D), but also of the local rule's enabling statute, § 8–217(a)(4) of Article 2B. Petitioner's action of continuing to provide adult entertainment on the premises after being notified that he was in violation of Board rules also evidences an intent by petitioner purposefully to ignore the authority of the Board.[13]  As mentioned, under § 16–507(r) of Article 2B, violations like those of petitioner can result in a fine "of not more than $5,000," in lieu of, or in addition to suspension or revocation.  The Board's action in fining petitioner $5,000.00 was therefore an authorized sanction under the State statutory scheme.

We agree with the Court of Special Appeals' conclusion in the present case that the Board, providing it does so in a proper manner, would have the power in appropriate circumstances to fine, suspend and/or revoke a license, thus subject-

---

**12.**  Effective October 1, 2003, § 16–507(r) now provides that the Board "may impose a fine not exceeding $12,500 instead of or in addition to suspension or revocation of a license for any violation that is cause for suspension or revocation under the alcoholic beverage laws affecting Prince George's County."

**13.**  Petitioner's actions in not ceasing the unapproved activity after being informed that he was in violation of the rules can likely be attributed to petitioner's own testimony that the amount of alcohol sold as packaged goods at the Lanham Inn premises nearly doubled after the establishment started offering topless dancing and that, in his opinion, the adult entertainment resulted in the increase in liquor sales.

ing an operator to fines, criminal penalties and ultimately the injunctive powers of the courts. Petitioner was fined for his violation of Board Rule 37(D). Petitioner's license to keep and sell alcohol at the Lanham Inn premises was contingent upon his not substantially altering the mode of operation of the premises. The Board, within its discretion, found that petitioner had significantly altered the mode of operation of the premises without first obtaining Board approval by introducing adult entertainment in the form of topless dancing at the Lanham Inn. This constituted a violation of Board Rule 37(D), which was promulgated pursuant to § 8–217(a)(4) of Article 2B.[14]

## IV. Conclusion

For the reasons we have stated, we shall affirm the Court of Special Appeals. We hold that the Board, under both Article 2B and its own local rules and regulations, has the legal authority to require Board approval, including a hearing if it deems it necessary, concerning any licensed establishment in Prince George's County that seeks to "significantly alter the mode of operation and the format of presentation of alcoholic beverages to the public" from that originally approved by the Board. Petitioner's changing of the Lanham Inn from what was thought of as a "pizza place" to an establishment offering adult entertainment constituted such a significant alteration in the mode of operation. Because petitioner continued to offer adult entertainment at the Lanham Inn after being notified that he was to first obtain Board approval, as is required under Board Rule 37(D), he violated the provisions of Article 2B and the Board rules and was fined accordingly. That fine was a proper sanction. It is not necessary to address any

---

14. It is apparent, in both Article 2B and the local Board rules and regulations, that the Board, if it had so desired and circumstances warranted, could have directly revoked or suspended petitioner's liquor license for his violations instead of fining him. While, in that situation, the topless dancing might have continued, it probably would not have been a profitable endeavor.

other issues that may have been discussed at the Circuit Court or the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**