HAMILTON, Senior Circuit Judge,
concurring in part and dissenting in part:
The majority is correct in holding that the intermediate level of scrutiny applies to test the constitutionality of Maryland Code, Article 2B, § 10 — 405(c)—(d), as amended by 2005 Md. Laws ch. 262, (the Challenged Statute) under the First Amendment to the United States Constitution, U.S. Const, amend. I. Applying the intermediate level of scrutiny, subsection (d) of the Challenged Statute reaches a substantial number of impermissible applications. However, because subsection (d) is severable from the remaining provisions of the Challenged Statute, the Challenged Statute should be partially invalidated, rather than facially invalidated, leaving its remaining provisions intact. Also, I would reach the Equal Protection Clause challenge against the grandfather clause, 2005 Md. Laws ch. 262, § 2 (the Grandfather Clause), hold the Grandfather Clause unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const, amend. XIV, § 1, and sever the Grandfather Clause from the Challenged Statute. Accordingly, I concur in part and dissent in part.
I
A
“Article 2B of the Maryland Code (“Article 2B”) comprehensively regulates the manufacture, sale, distribution, transportation and storage of alcoholic beverages in [Maryland].” Paek v. Prince George’s County Bd. of License Comm’rs, 381 Md. 583, 851 A.2d 540, 544 (2004). “The stated purpose of Article 2B is ‘to obtain respect and obedience to law and to foster and promote temperance.’” Id. (quoting Md. Code, Art. 2B, § l-101(a)(l)). Article 2B further states:
It is the legislative intent that the policy will be carried out in the best public interest by empowering ... the various local boards of license commissioners *304 and liquor control boards ... with sufficient authority to administer and enforce the provisions of this article---The restrictions, regulations, provisions and penalties contained in this article are for the protection, health, welfare and safety of the people of this State.
Md.Code, Art. 2B, § l-101(a)(2)-(3). In relevant part, Article 2B, § 10 — 405(b), provides that an establishment’s liquor license shall be revoked if any of the activities listed in subsection (c) of the Challenged Statute, pertaining to restrictions on attire and conduct, or subsection (d) of the Challenged Statute, pertaining to restrictions on entertainment, occur on the licensed premises.
Subsection (c) of the Challenged Statute provides:
With respect to attire and conduct, a person may not:
(1) Be employed or used in the sale or service of alcoholic beverages in or upon the licensed premises while the person is unclothed or in attire, costume or clothing so as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;
(2) Be employed or act as a hostess or act in a similar-type capacity to mingle with the patrons while the hostess or person acting in a similar-type capacity is unclothed or in attire, costume or clothing as described in paragraph (1) of this subsection;
(3) Encourage or permit any person on the licensed premises to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person; or
(4) Permit any employee or person to wear or use any device or covering exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion of it.
Md.Code, Art. 2B, § 10-405(c).
Subsection (d) of the Challenged Statute provides:
With respect to entertainment provided, a person may not:
(1) Permit any person to perform acts of or acts which simulate:
(1) The act of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law;
(ii) The touching, caressing or fondling of the breast, buttocks, anus or genitals; or
(iii) The display of the pubic hair, anus, vulva or genitals;
(2) Permit any entertainer whose breasts or buttocks are exposed (subject to the restrictions of paragraph (1) of this subsection) to perform closer than six feet from the nearest patron; or
(3) Permit any person to use artificial devices or inanimate objects to depict, perform or simulate any activity prohibited by paragraph (1) of this subsection.
Md.Code, Art. 2B, § 10-405(d).
B
“Pursuant to the overbreadth doctrine, a party may challenge a statute on its face because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.” Giovani Carandola, Ltd. v. Fox (Carandola II), 470 F.3d 1074, 1081 (4th Cir.2006) (internal quotation marks omitted). Where, as here, “conduct and not merely speech is involved[,] the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s *305 plainly legitimate sweep.” Id. (internal quotation marks, alteration marks, and ellipses omitted). “A law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications,” and “[a] court should invoke a limiting construction or employ partial invalidation before resorting to a finding of facial overbreadth.” Id. (ellipses, internal quotation marks, and alteration marks omitted). As the Supreme Court has explained:
Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact. Because the unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions, the normal rule is that partial, rather than facial, invalidation is the required course.
Free Enter. Fund v. Public Co. Accounting Oversight Bd., — U.S. -, 130 S.Ct. 3138, 3161, 177 L.Ed.2d 706 (2010) (internal quotation marks, citations, and alteration marks omitted).
The intermediate level of scrutiny applies to content-neutral restrictions on speech or other forms of expression protected by the First Amendment aimed at ameliorating the harmful secondary effects of such speech or expression. Giovani Carandolo, Ltd. v. Bason (Carandolo I), 303 F.3d 507, 514 (4th Cir.2002). The majority correctly concludes that at least one purpose of the Challenged Statute is to address the secondary effects resulting from the combination of alcohol and nude dancing, which purpose is sufficient for us to treat the Challenged Statute as content-neutral, triggering application of the intermediate level of scrutiny. Ante at 305. To pass muster under the intermediate level of scrutiny, “a law must be narrowly tailored to serve substantial governmental interests.” Am. Life League Inc. v. Reno, 47 F.3d 642, 648-49 (4th Cir.1995).
Beginning with the substantial-governmental-interests prong, even without considering any evidence, the conclusion is inescapable that Maryland has a substantial interest in regulating nude and topless dancing and has a substantial interest in regulating simulated sexual activity and fondling of sexual organs in establishments holding liquor licenses. See Carandolo II, 470 F.3d at 1082 (concluding that, “even without' considering any evidence,” North Carolina “has a substantial interest in regulating nude and topless dancing, because such entertainment has a long history of spawning deleterious effects,” and “a substantial interest in regulating simulated sexual activity and fondling of sexual organs” in establishments holding liquor licenses, because North Carolina “may rely on evidentiary foundation set forth in [City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) and Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) ], to the effect that harmful secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood,” (internal quotation marks and alteration marks omitted)).
This brings us to the narrowly tailored prong of intermediate scrutiny. In my view, the entirety of subsection (c) of the Challenged Statute passes muster under this prong. Subsections (c)(1) and (c)(2) of the Challenged Statute, unlike the old and new versions of North Carolina’s adult entertainment statute at issue in Corándolo I and Corándolo II, respectively, specifically tie their restrictions pertaining to persons “unclothed or in attire, costume or clothing so as to expose to view any portion of the female breast *306 below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals” to those selling or serving alcoholic beverages or to those acting as a hostess mingling with the patrons or in a similar-type capacity, and thus do not burden First Amendment protected artistic expression such as a ballet, a Shakespearian play, or other mainstream productions. Md.Code, Art. 2B, § l(M=05(e)(l). Additionally, the Challenged Statute’s structural division of “Attire and conduct” restrictions in subsection (c) from “Entertainment restrictions,” in subsection (d) strongly supports this conclusion. Under this division, the prohibitions set forth in subsection (c) are reasonably construed as not pertaining to entertainment at all, but to patrons of the licensed establishment and to those employees not engaged in the entertainment of patrons. See Carandola II, 470 F.3d at 1084 (“On a facial challenge, we must apply a reasonable limiting construction where one is available.”).
Similarly, subsections (c)(3) and (c)(4) of the Challenged Statute, do not burden First Amendment protected artistic expression, because they are reasonably read as not pertaining to entertainment at all, but to patrons of the licensed establishment and to those employees not engaged in the entertainment of patrons.[1] Moreover, at least with respect to subsection (c)(3)’s prohibition on fondling of the breasts, buttocks, anus, etc., the language is reasonably interpreted “to prohibit only [actual] manipulation of specified erogenous zones,” Carandola II, 470 F.3d at 1084, which prohibition “has no prohibitory effect on non-erotic dance and would not apply to other mainstream entertainment, including popular and award-winning musicals such as Cabaret, Chicago, Contact, and The Full Monty,” id. at 1083 (internal quotation marks omitted).
In my view, the constitutional problems with the Challenged Statute arise under subsection (d). I agree with the majority opinion to the extent that it holds that the prohibitions in subsection (d) of the Challenged Statute reach a substantial number of impermissible applications to First Amendment protected expression, including, for example, the ballet or a drama depicting the horrors of rape. Ante at 299-300. The language of the old version of North Carolina’s adult entertainment statute that we found in Carandola I to substantially burden First Amendment protected expression is contained in subsection (d) of the Challenged Statute. Carandola I, 303 F.3d at 516. Not surprisingly, the majority’s holding in the present case that the Challenged Statute is unconstitutionally overbroad focuses upon this same language. While we know based upon our decision in Carandola II, 470 F.3d at 1083-84, (1) with respect to entertainment provided on licensed premises, the Challenged Statute’s prohibition on “simulate[d]” sexual acts is readily susceptible to the construction that it only applies to performances that give the realistic impression or illusion that sexual intercourse or masturbation, etc., is being performed for the audience, Md.Code, Art. 2B, § 10 — 405(d)(l)(i), (2) with respect to entertainment provided on licensed premises, the Challenged Statute’s prohibition on “fondling of the breast, buttocks, anus or genitals,” id. at § 10 — 405(d)(l)(ii), is readily susceptible to the construction that it “only bars a performer from actually manipulating specified erogenous zones,” Carandola II, 470 F.3d at 1083 (internal quotation marks omitted), and (3) while these limiting constructions cure *307 much of subsection (d)’s overbreadth problems, such constructions are inadequate to cure those problems completely. Critically, the Corándola II court upheld against a facial overbreadth challenge the new version of North Carolina’s adult entertainment statute based upon the combination of the limited constructions just mentioned and the then newly enacted carve-out provision for “persons operating theaters, concert halls, art centers, museums, or similar establishments that are primarily devoted to the arts or theatrical performances, when the performances that are presented are expressing matters of serious literary, artistic, scientific, or political value,” N.C. Gen.Stat. § 18B-1005.1 (2005), which the court determined “sheltered] most protected activity,” Carandola II, 470 F.3d at 1085. See also id. (holding that the new version of North Carolina’s adult entertainment statute, with the limited constructions of the language at issue proffered by North Carolina’s Alcohol Beverage Control Commission and the carve-out provision, does not reach a substantial number of impermissible applications, and therefore, reversing the portions of the district court’s order holding subsections (a)(2) and (a)(3) of the statute unconstitutional as facially over-broad). Accordingly, subsection (d) of the Challenged Statute applies to a substantial amount of protected expression such as ballet performances, theatrical productions, and comedy routines at comedy clubs. Thus, to the extent the majority opinion affirms the district court’s striking down of subsection (d) of the Challenged Statute and its corresponding permanent injunction against the enforcement of subsection (d), I concur in the proposed opinion and the judgment.
However, I disagree with the majority’s holding that the Challenged Statute is not readily susceptible to a limiting construction, and its implicit holding that the Challenged Statute is not susceptible to partial invalidation. First, the Challenged Statute is readily susceptible to the limiting construction that subsection (c) does not pertain to performers or persons otherwise engaged in protected expression.[2] Second, with the excise of subsection (d) from the Challenged Statute, the Challenged Statute, including subsection (c), remains “ ‘fully operative as a law.’ ” Free Enter. Fund, 130 S.Ct. at 3161 (one set of internal quotation marks omitted). Third, it is not evident that Maryland’s legislature would not have enacted the attire and conduct restrictions contained in subsection (c) of the Challenged Statute in the absence of an ability to enact the entertainment restrictions contained in subsection (d) of the Challenged Statute, and therefore, we must sustain the Challenged Statute’s remaining provisions. Id. (upholding Sarbanes-Oxley Act with unconstitutional ten *308 ure restrictions excised, because remaining provisions were capable of functioning independently and no evidence that Congress would not have enacted remaining provisions independently of unconstitutional tenure restrictions). The result limits the solution to the problem in accordance with Supreme Court precedent. Id. (“Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.” (internal quotation marks omitted)). Thus, to the extent the majority opinion affirms the district court’s striking down of subsection (c) of the Challenged Statute and its corresponding permanent injunction against the enforcement of subsection (c), I dissent from the majority opinion and the judgment. I would reverse in such regard.
II
Plaintiffs also sought a declaration and corresponding injunctive relief that the Grandfather Clause, 2005 Md. Laws ch. 262, § 2, violates the Equal Protection Clause of the Fourteenth Amendment.[3] The Fourteenth Amendment’s Equal Protection Clause states, in relevant part, that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const, amend. XIV, § 1. The Equal Protection Clause “limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations.” Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 289 (4th Cir.1998) (internal quotation marks & emphasis omitted).
The Grandfather Clause, effective October 1, 2005, exempts the following from being subject to Article 2B, § 10-405 in Prince George’s County:
a current alcoholic beverages license holder that currently conducts an activity that is made unlawful by this Act only if the license holder:
(a) received approval from [Prince George’s County Board of License Commissioners] to conduct the activity on or before August 15,1981; and
(b) has owned the licensed premises continuously since September 1, 1981.
2005 Md. Laws ch. 262 § 2. Thus, the Grandfather Clause exempts from Article 2B, § 10-405 any then current alcoholic beverages license holder that had received approval to conduct adult entertainment more than exactly twenty-four years, one month, and sixteen days prior to the effective date of Article 2B, § 10-405 on October 1, 2005, and had owned the licensed premises continuously since September 1, 1981. 2005 Md. Laws ch. 262, § 2.
Below, the district court held that the Grandfather Clause was unrelated to any legitimate community interest and found that it was enacted solely to favor a politically connected business establishment, and therefore, violated the Equal Protection Clause of the Fourteenth Amendment. The Legend Night Club v. Prince George’s County Bd. Of License Comm’rs, 2009 WL 926989 at *6 (D.Md. April 1, 2009). The district court also rejected Defendants’ contention that it should sever the Grandfather Clause so as to cure the Equal Protection defect. Id.
On appeal, Defendants argue that the district court erred in holding that the Grandfather Clause violates the Equal *309 Protection Clause, because the district court improperly relied upon the testimony of former Senator Broadwater in finding that the Maryland legislature enacted the Grandfather Clause to specifically favor the Ebony Club.[4] Defendants contend that the district court should have determined that the Grandfather Clause serves typical, legitimate reliance interests. Alternatively, Defendants contend that the district court should have severed the Grandfather Clause instead of striking down Article 2B, § 10-405(e)-(d), as amended by *2005 Md. Laws ch. 262, in toto as violative of the Equal Protection Clause.
I agree with the district court that no reasonably conceivable state of facts exists that could provide a rational basis for the classification in the Grandfather Clause. Legend Night Club, 2009 WL 926989 at *5. (“Where an Equal Protection challenge is brought against a statute that does not draw a distinction based on a suspect class, the statute is presumed constitutional, so long as the challenged classification rationally relates to a legitimate state interest.”). When the Maryland Legislature enacted 2005 Md. Laws ch. 262, the Legend Night Club had been in business four days short of twenty-three years. Given the relatively little difference in time between adult night clubs in business twenty four years versus adult night clubs in business twenty-three years, Defendants’ proffered rationale of typical, legitimate reliance interests, is farfetched. Accordingly, I would hold that the district court was correct in holding that the Grandfather Clause violates the Equal Protection Clause.
In my opinion, however, the district court erred in not severing the Grandfather Clause. State law governs questions pertaining to the severability of a state statute’s provisions, Sons of Confederate Veterans, Inc., ex rel. Griffin v. Comm’r of Va. Dep’t of Motor Vehicles, 288 F.3d 610, 627 (4th Cir.2002), and Maryland law provides that Maryland statutes are severable unless a statute specifically provides otherwise or a statute is “incomplete and incapable of being executed in accordance with legislative intent,” Md.Code, Art. 1, § 23. Here, Article 2B, § 10-405(c)-(d) is readily executable absent the Grandfather Clause. Accordingly, although the district court correctly held that the Grandfather Clause violated the Equal Protection Clause, it erred in relying on such violation to strike down the entirety of Article 2B, § 10-405(c)-(d), as amended by 2005 Md. Laws ch. 262, instead of severing the Grandfather Clause.
Ill
For the reasons stated, I would reverse the district court’s declaration that subsection (c) of the Challenged Statute is violative of the First Amendment and its corresponding permanent injunction. I would affirm the district court’s declaration that subsection (d) of the Challenged Statute is violative of the First Amendment and its corresponding permanent injunction based upon such violation. Finally, I would affirm the district court’s declaration that the Grandfather Clause violates the Equal Protection Clause of the Fourteenth Amendment, sever the Grandfather Clause from the Challenged Statute, and reverse the corresponding permanent injunction to the extent that it enjoins enforcement of the Challenged Statute based upon the district court’s holding that the Grandfa *310 ther Clause violates the Equal Protection Clause.

. The “Entertainment restrictions” are specifically addressed in subsection (d) of the Challenged Statute. Md.Code, Art. 2B, § 10-405(d).

. The majority broadly asserts that recognizing and applying this reasonable limiting construction of subsection (c) usurps the role of the Maryland legislature and rewrites the Challenged Statute. Ante at 302. This assertion is without merit. First, such limiting construction does not read subsection (c) as meaning something else than what it actually states, and therefore, rewrites nothing. Second, the "principle that statutes will be interpreted to avoid constitutional difficulties,” is "well-established,” Frisby v. Schultz, 487 U.S. 474, 483, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), and "[t]hus, where an unconstitutionally broad statute is 'readily subject to a narrowing construction' that would eliminate its constitutional deficiencies, we accept that construction,” Berger v. City of Seattle, 569 F.3d 1029, 1046 (9th Cir.2009) (quoting Frisby, 487 U.S. at 482, 108 S.Ct. 2495). See also Virginia v. American Booksellers Ass'n, Inc., 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) ("It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be readily susceptible to a narrowing construction that would make it constitutional, it will be upheld.” (internal quotation marks omitted)).

. Prince George's County first became subject to Article 2B, § 10-405 on October 1, 2005, pursuant to 2005 Md. Laws ch. 262 § 1.

. There is debate among the parties as to whether the Grandfather Clause actually exempts the Ebony Club, because Senator Broadwater apparently transferred ownership of the club to his wife and son at some point. This matter is irrelevant to the current analysis on appeal.