995 A.2d 257

**THANNER ENTERPRISES, LLC**

v.

**BALTIMORE COUNTY, Maryland.**

**No. 113 Sept.Term, 2008.**

Court of Appeals of Maryland.

May 14, 2010.

David F. Mister (Amy K. Finneran of Mister, Winter & Bartlett, LLC, Timonium, MD), on brief for Appellant.

Gregory E. Gaskins, Asst. County Atty. (John E. Beverungen, County Atty., Towson, MD), on brief for Appellee.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, Judge.

In this case we must determine whether the Board of Liquor License Commissioners for Baltimore County ("the Board") acted outside the scope of its statutory authority when it imposed a sanction on Thanner Enterprises, LLC, an alcoholic beverages license holder, prohibiting any outdoor music at its establishment. We hold that the sanction was outside the scope of the Board's authority. We therefore reverse the judgment of the Circuit Court and remand the case to that court with directions to reverse the Board's imposition of that sanction.

## I.

Appellant, Thanner Enterprises, LLC, holds a Class D alcoholic beverages license for the benefit of its establishment, a bar and restaurant named Dock of the Bay, which is located in Baltimore County, Maryland. Appellant provided live and recorded music and other entertainment to its patrons at the establishment. Some of that entertainment took place outside of the building.

In July 2007, four people who lived in the neighborhood of Dock of the Bay lodged complaints with the Board, asserting

that on July 1, 2007, outside music at Dock of the Bay was unduly loud. Based on these complaints, the Board sent Appellant a Notice of a Show Cause Hearing alleging violations of Article 2B, § 10–401 of the Maryland Code[1] and several Liquor Board Rules and Regulations (the "Board Rules"). *See* §§ 10–401 & 10–403 (dictating the process by which a liquor license board may revoke or suspend a license).[2]

---

**1.** Unless otherwise indicated, all subsequent statutory references are to Maryland Code (1957, 2005 Repl.Vol.), Article 2B.

**2.** The show cause notice did not state which specific provisions of § 10–401 that Appellant was alleged to have violated. We, therefore, list all of the provisions in that section that Appellant's conduct could have violated:

Section 10–401(a)(2) provides that a liquor board "may" revoke or suspend a licensee's license "for any cause which in the judgment of the official, court or board, is necessary to promote the peace or safety of the community in which the place of business is situated."

Section 10–401(a)(3)(i)–(x) lists the following causes for which a liquor board "must" revoke or suspend a licensee's license:

\* \* \*

(i) Conviction of the licensee or permittee for violation of any of the provisions of the Tax—General Article that relate to the alcoholic beverage tax or the provisions of this article;

(ii) Willful failure or refusal of any licensee or permittee to comply with the provisions of the Tax—General Article that relate to the alcoholic beverage tax or any provisions of this article, or any rule or regulation that may be adopted in pursuance of this article or the provisions of the Tax—General Article that relate to the alcoholic beverage tax;

(iii) Making of any material false statement in any application for a license or permit;

(iv) Two or more convictions of one or more of the clerks, agents, employees and servants of a licensee or permittee under the provisions of this article or the provisions of the Tax–General Article that relate to the alcoholic beverage tax of any violation on the premises subject to the license or permit, within a period of two years;

(v) Possession upon the premises of any retail dealer other than the holder of a Class E, Class F or Class G license of any alcoholic beverage upon which the tax imposed by § 5–102 of the Tax—General Article has not been paid;

(vi) Violation of the provisions of § 12–104 of this article;

(vii) Willful failure of any licensee or permittee to keep the records required by this article or the provisions of the Tax—General Article that relate to the alcoholic beverage tax or to allow any inspections of such records by a duly authorized person;

Specifically, the notice alleged that Appellant violated the following Board Rules: Rule 2, entitled "Prohibited Practices," which prohibits a licensee from violating any laws or from committing actions that are contrary to the "public peace, safety, health, welfare, quiet, or morals"; [3] Rule 3, entitled, "Noise and Music," which regulates "mechanical music boxes, live music and sound-making devices" and precludes a licensee from "disturbing the peace, tranquility, safety, health, and quiet of the neighborhood"; [4] and Rule 16, entitled

---

(viii) Possession of any alcoholic beverage which any licensee or permittee other than the holder of a Class E, Class F or Class G license is not licensed to sell;

(ix) Suspension or revocation of a permit issued to any licensee or permittee by the Federal Bureau of Alcohol, Tobacco and Firearms or for conviction of violating any federal laws relating to alcoholic beverages; and

(x) Failure to furnish bond as required by this article within fifteen days after notice from the Comptroller.

Section 10–401(a)(4) contains the following "catch-all" provision, "[r]evocation and suspension of licenses is also authorized for such other offenses as specified in other parts of this article."

Section 10–403, entitled "Procedure," provides in pertinent part:

(a) *Generally.*—(1) The Comptroller or the Board of License Commissioners for any county or Baltimore City, as the case may be, may on its own initiative or upon the written complaint of ten or more citizens, residents, real estate owners and voters of the precinct in which any licensed place of business is situated or upon the complaint of any deputy or inspector employed by the Comptroller in the administration of this law, or any peace officer, or if the licensee is located within the corporate limits of any municipality, which is within a county, upon complaint of the mayor and council of that municipality, after a hearing upon charges to be framed by the officer or Board, or upon the complaint, notice of which shall be given to the licensee at least ten days before the hearing, revoke or suspend any license issued under the provisions of this article.

**3.** Rule 2, provides, in pertinent part:

D. No licensee shall commit or allow the commission on his premises of any act which shall be contrary to any federal, state or local statute, law or ordinance or against the public peace, safety, health, welfare, quiet, or morals.

**4.** Rule 3, provides:

A. All holders of Alcoholic Beverage Licenses in Baltimore County shall cease the playing of mechanical music boxes, live music and sound-making devices at 11:00 p.m. every day unless such licensed

"Cooperation," which requires that a licensee cooperate with certain government officials conducting official business at the licensee's establishment.[5]

The Board held the Show Cause Hearing on August 6, 2007. At the hearing, several of the neighbors who initiated the complaint testified, alleging that on July 1, 2007, the outside music was unduly loud between 4:00 p.m. and 8:00 p.m. The Board also heard testimony from a neighbor in the area who, contrary to the complaints, asserted that the music on that day was not too loud. In addition, several Dock of the Bay employees testified that on the date in question they received a complaint about the music and, in response, turned the music down. At the conclusion of the hearing, the Board sustained the violations set forth in the hearing notice, finding that Appellant had violated §§ 10–401 and 10–403 and Rules 2, 3, and 16. Consequently, the Board imposed a $1,000 fine on Appellant and indefinitely prohibited Appellant from playing outdoor music.

Appellant sought judicial review of the Board's decision in the Circuit Court for Baltimore County. Appellant contested the Board's authority to impose a sanction prohibiting Appellant from playing outdoor music but did not contest the $1,000 fine. The Circuit Court held oral arguments on April 22, 2008. On May 7, 2008, the Circuit Court issued a Memorandum Opinion and Order affirming the Board's decision. The Cir-

---

establishments are sufficiently enclosed or located in an area where the sound will not disturb the peace of nearby residents.

B. All licensees shall operate their establishments in such a manner as to avoid disturbing the peace, tranquility, safety, health, and quiet of the neighborhood where located. It shall be the responsibility of the licensees to take all precautionary measures to comply with this subsection.

5. Rule 16, provides:

All license holders must cooperate with representatives of the Board of Liquor License Commissioners, members of the Police Department, Health Department, Fire Department, Building Engineer Office, Grand Jury and representatives of other authorized agencies whenever any of these persons are on licensed premises on official business.

cuit Court determined that the Board "acted within the scope of its express statutory authority in prohibiting [Appellant] from playing outside music at their licensed establishment." The court reasoned that the Board's express authority was derived from § 9–201(a)(2), which provides that, "by regulation," a local liquor board may "[r]egulate and limit the use of mechanical music boxes and other sound-making devices." Further, the court reviewed the record of the Board's hearing and determined that the Board's findings that Appellant had violated Rules 2 and 3 were supported by "substantial evidence."

On May 28, 2008, Appellant appealed to the Court of Special Appeals. Prior to consideration by that court, we issued a writ of certiorari on our own motion and ordered that the case be docketed for consideration. *Thanner Enterprises, LLC v. Baltimore County*, 406 Md. 443, 959 A.2d 793 (2008). Appellant presents two questions:

> Whether the Board of Liquor License Commissioners exceeded its authority by prohibiting the Appellant from having outside music at the licensed premises?
> Whether the Board of Liquor License Commissioners' decision was arbitrary and unreasonable?[6]

## II.

The lawfulness of the Board's prohibition of outside music at Appellant's establishment turns on whether the General Assembly has granted the Board the authority to impose such a sanction. Appellant, relying on a trilogy of cases, *Board of Liquor License Commissioners v. Hollywood Productions, Inc.*, 344 Md. 2, 684 A.2d 837 (1996), *Board of Liquor License Commissioners, v. Fells Point Café, Inc.*, 344 Md. 120, 685 A.2d 772, (1996), and *Board of Liquor License Commissioners v. J.R. Brothers, Inc.*, 119 Md.App. 308, 705 A.2d 16 (1998), submits that liquor boards may only impose sanctions that are

---

**6.** We need not address the second question presented, challenging the Board's decision as arbitrary and unreasonable, because we hold that the Board exceeded its authority when it imposed the sanction at issue.

either expressly or impliedly authorized by Article 2B, or to which a licensee has consented.[7] Appellant contends that no provision of Article 2B expressly or impliedly authorizes the sanction imposed by the Board. Consequently, Appellant maintains, the sanction is illegal.

Appellee does not dispute that the liquor boards are restricted to the powers the General Assembly set forth in Article 2B. Appellee submits, however, that § 9–201(a)(2) grants the Board the express authority to prohibit Appellant from playing outdoor music. Appellee maintains that, because § 9–201(a)(2) grants liquor boards the power to "[r]egulate and limit the use of mechanical music boxes and other sound-making devices," the Board may limit licensees' use of such devices as it "deem[s] appropriate." Appellee points out that, pursuant to that provision, the Board promulgated Rule 3 of its Rules and Regulations, which "expressly prohibit[s] licensed establishments from disturbing the peace." Appellee contends that the sanction was authorized pursuant to the Board's authority to determine that Appellant had "disturbed the peace and tranquility of the neighborhood" and therefore violated Rule 3.

## III.

The scope of our review of a local liquor licensing board's decision is limited under § 16–101(e)(1)(i), which provides, in relevant part:

Upon the hearing of such appeal, the action of the local licensing board shall be presumed by the court to be proper and to best serve the public interest. *The burden of proof shall be upon the petitioner* to show that the decision complained of was against the public interest and that the local licensing board's ·discretion in rendering its decision

---

7. In *Fells Point* we held that local liquor board may impose restrictions on a license other than those prescribed in Article 2B if the licensee has consented to those restrictions. 344 Md. at 137, 685 A.2d at 780. Neither party contends, and the record gives no indication, that Appellant consented to a nonconforming license restriction.

was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or *that such decision was beyond the powers of the local licensing board, and was illegal.*

(Emphasis added).

 Appellant challenges the Board's decision on the ground that the decision went "beyond the powers of the local licensing board, and was illegal." *Id.* When we review the decision of an administrative agency, such as the Board, "we look 'through the circuit court's ... decision[ ], although applying the same standards of review, and evaluate[ ] the decision of the agency.' " *People's Counsel for Baltimore County v. Loyola College,* 406 Md. 54, 66, 956 A.2d 166, 173 (2008) (quoting *People's Counsel for Baltimore County v. Surina,* 400 Md. 662, 681, 929 A.2d 899, 910 (2007)).

 The scope of the Board's authority under Article 2B is a question of statutory interpretation and, thus, a question of law. In *Maryland Aviation Administration v. Noland,* 386 Md. 556, 873 A.2d 1145 (2005), we clarified a court's role when reviewing an administrative agency's conclusions of law. We explained:

> [A] court's task on review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency[.] Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. ... Furthermore, the expertise of the agency in its own field should be respected.

*Id.* at 571, 873 A.2d at 1154–55 (internal quotation marks and citations omitted) (emphasis in original). *Accord Crofton Convalescent Ctr., Inc. v. Dep't of Health & Mental Hygiene,* 413 Md. 201, 215, 991 A.2d 1257, 1265, 2010 Md. Lexis 112, at *19– 20 (2010) ("[E]ven when reviewing an agency's legal conclu-

sions, an appellate court must respect the agency's expertise in its field.").

Nevertheless, "when a statutory provision is entirely clear, with no ambiguity whatsoever, administrative constructions, no matter how well entrenched, are not given weight." *Noland*, 386 Md. at 572 n. 2, 873 A.2d at 1155 n. 2 (internal quotation marks and citations omitted). "Deference to the interpretation of the agency, however, does not mean acquiescence or abdication of our construction responsibility. Despite the deference, 'it is always within our prerogative to determine whether an agency's conclusions of law are correct.'" *Adventist Health Care, Inc. v. Md. Health Care Comm'n*, 392 Md. 103, 121, 896 A.2d 320, 331 (2006) (quoting *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576, 870 A.2d 186, 193 (2005)). For reasons we shall explain, we agree with Appellant that the sanction the Board imposed on Appellant exceeded the scope of the Board's express and implied authority, as delegated by the General Assembly, and therefore constituted an illegal act "beyond the powers of [a] local licensing board." *See* § 16–101(e)(1)(i).

An agency's authority extends only as far as the General Assembly prescribes. *Lussier v. Md. Racing Comm'n*, 343 Md. 681, 701, 684 A.2d 804, 814 (1996) ("An administrative agency, as a creature of statute, has only the power its enabling statute delegates to it.") (Bell, J., dissenting); *Hollywood Prods.*, 344 Md. at 10, 684 A.2d at 841 ("[R]egardless of any rule making authority that the Liquor Board may enjoy, it may not impose a sanction that exceeds the confines of its expressly or impliedly delegated powers."). When the General Assembly has vested an agency, such as a liquor board, with the authority to impose sanctions, those sanctions must be expressly or impliedly authorized. *See Lussier*, 343 Md. at 685–87, 684 A.2d at 805–07 (rejecting the argument that "administrative agencies lack the authority to fix penalties in the absence of specific statutory authorization from the Legislature" and concluding that agency-imposed sanctions are valid if consistent with the agency's implied

authority (internal quotation marks and citations omitted)). Of course, whether an agency is expressly authorized to impose a particular sanction is a matter of statutory interpretation.

 "[T]he interpretation of an agency rule is governed by the same principles that govern the interpretation of a Statute." *Miller v. Comptroller*, 398 Md. 272, 282, 920 A.2d 467, 473 (2007) (internal quotation marks and citations omitted). Our primary objective "is to ascertain and effectuate the intent of the Legislature." *Kushell*, 385 Md. at 576, 870 A.2d at 193. The most reliable indicator of the Legislature's intent is the statute's plain language as ordinarily understood. *Id.*, 870 A.2d at 193. "If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written." *Id.* at 577, 870 A.2d at 193. Section 16–507(e) prescribes, "with particularity," the sanctions that the Board may impose:

> In Baltimore County, the Board of License Commissioners, after a public hearing and on finding a violation, may impose a fine not exceeding $2,000, and/or may suspend or revoke a license, for any violation that is cause for suspension or revocation under the alcoholic beverages laws and rules and regulations affecting Baltimore County.

§ 16–507(e); *Hollywood Prods.*, 344 Md. at 15, 684 A.2d at 844 ("In general, there appear to be three sanctions to which the General Assembly intends the liquor boards to resort in the appropriate circumstance: monetary fines, license suspension, and license revocation."). The prohibition of outdoor music does not constitute a fine or the revocation or suspension of a license.

Appellee argues, however, that § 9–201(a)(2) expressly authorizes the Board to "limit licensees from playing music and other sound-making devices." As previously mentioned, § 9–201 grants liquor boards the power to promulgate regulations that "[r]egulate and limit the use of mechanical music boxes and other sound-making devices." § 9–201(a)(2). This provision is an enabling law that permits local liquor boards to

establish rules and regulations governing, among other things, the playing of music and the use of sound-making devices. Appellee correctly argues that, pursuant to § 9–201, the Board was expressly authorized to promulgate Rule 3 of its Rules and Regulations, which provides:

> All holders of Alcoholic Beverage Licenses in Baltimore County shall cease the playing of mechanical music boxes, live music and sound-making devices at 11:00 p.m. every day unless such licensed establishments are sufficiently enclosed or located in an area where the sound will not disturb the peace of nearby residents.

Appellee contends that, because the Board was authorized to promulgate Rule 3 and to determine that Appellant had violated that rule, the indefinite prohibition of outdoor music was expressly authorized. This argument rests on a flawed interpretation of § 9–201.

■■■ An agency's authority to promulgate regulations restricting certain conduct does not necessarily grant that agency the authority to impose any conceivable sanction for violations of those regulations. *See Hollywood Prods.*, 344 Md. at 10, 684 A.2d at 841 ("[R]egardless of any rule making authority that the Liquor Board might enjoy, it may not impose a sanction that exceeds the confines of its expressly or impliedly delegated powers."). By its language, § 9–201 authorizes local liquor boards, *by regulation*, to restrict and limit music playing. Nowhere in § 9–201 does the General Assembly expressly authorize local liquor boards to issue sanctions that restrict and limit music playing.

Even if we assume, *arguendo*, that §§ 9–201 and 16–507(e) apply to the same situation, the more specific provision controls. *See Suter v. Stuckey*, 402 Md. 211, 231, 935 A.2d 731, 743 (2007) ("In the case where two statutes apply to the same situation, we first attempt to reconcile them, and then, if the statutes remain contradictory, the more specific statute controls."). In this case, § 16–507(e) is the more specific provision. Section 16–507(e) explicitly lists three sanctions and leaves no room for an inference that other sanctions are

available. Furthermore, under this interpretation, the two provisions are easily reconciled. Section 9–201 authorizes the Board to promulgate regulations restricting and limiting the use of music boxes and other sound-making devices, and § 16–507(e) sets forth the sanctions that the Board may impose when a licensee violates those regulations. Accordingly, we hold that the Board was not expressly authorized to impose a sanction that indefinitely prohibits Appellant to play outdoor music at its establishment.

▮▮▮▮▮ We turn now to whether the Board is impliedly authorized to impose sanctions that prohibit licensees to play music. The scope of an agency's implied powers "turns on the General Assembly's intent in empowering the agency and the statutory scheme under which the agency acts." *Hollywood Prods.*, 344 Md. at 11, 684 A.2d at 842. When the General Assembly has bestowed upon an agency a broad delegation of power, we liberally construe the scope of that agency's implied powers. *Id.*, 684 A.2d at 842; *see also Christ v. Dep't of Natural Res.*, 335 Md. 427, 439, 644 A.2d 34, 39 (1994) ("In any particular area of legislative concern, whether there should be a broad general delegation of regulatory authority to administrators, or a more specific delegation, is a choice for the General Assembly.").

▮▮▮▮ When considering the implied powers of local liquor boards, this Court has consistently held, based on a survey of the Article 2B statutory scheme, that the General Assembly intended to grant the boards specific delegated powers, rather than broad delegated authority. *See, e.g., Fells Point Café, Inc.*, 344 Md. at 137, 685 A.2d at 780; *Hollywood Prods.*, 344 Md. at 12–13, 684 A.2d at 842–43 ("In the field of regulatory law, more attention has perhaps been given by legislatures to the control and management of the liquor business than of any other traffic[.]" (internal quotation marks and citations omitted)); *Coalition for Open Doors v. Annapolis Lodge No. 622, Benevolent and Protective Order of the Elks*, 333 Md. 359, 373, 635 A.2d 412, 418 (1994). "[T]he General Assembly has chosen to closely control by statute even the more detailed

aspects of the alcoholic beverages industry." *Hollywood Prods.*, 344 Md. at 13, 684 A.2d at 842–43; *see also Annapolis Lodge No. 622,* 333 Md. at 371–72, 635 A.2d at 418 (observing that Article 2B covers a "myriad of subjects," including *inter alia* the "types of places which may be licensed, the types of beverages which may be sold, the hours of sale, the license fees," and conditions in licensee establishments, "the conduct of licensees, ownership of establishments, membership requirements for association or club licensees" (footnotes omitted)). Because the General Assembly enacted such a comprehensive statutory scheme, "the authority of the administering agencies necessarily is more circumscribed than the typical administrative body"; the local liquor boards' authority to impose sanctions is no exception to this rule. *Hollywood Prods.*, 344 Md. at 13, 684 A.2d at 843.

In *Hollywood Productions,* we considered a sanction imposed by the Baltimore City Board of Liquor Commissioners that restricted the hours during which a licensee could operate its nightclub. 344 Md. at 6, 684 A.2d at 839. We concluded that, because the General Assembly had expressly granted some local liquor boards the power to change the hours of sale, but had not granted the Baltimore City Board the same authority, that Board did not have the power to modify a licensee's hours of operation. *Id.* at 16, 684 A.2d at 844. We further concluded that, because Article 2B explicitly sets forth the sanctions available to local liquor boards and prescribes individually the maximum fine that each local board may impose, the General Assembly did not intend to authorize the local liquor boards to impose sanctions "fashioned on an *ad hoc* basis." *Id.,* 684 A.2d at 844. ("Such an elaborate statutory scheme suggests a specific, rather than broad, delegation of authority to the liquor boards and contradicts the notion that restrictions, penalties, and sanctions may be fashioned on an *ad hoc* basis.").

We reached a similar conclusion in *Fells Point* when we considered whether the Board of Liquor License Commissioners for Baltimore City properly could impose on a license, as a sanction, restrictions that prohibited live entertainment, a

D.J., dancing, and exotic entertainment. 344 Md. at 135, 685 A.2d at 779. We held that the only sanctions available to local liquor boards "to punish licensee misconduct" are the three set forth in Article 2B: monetary fines, license suspension, and license revocation. *See id.* at 136–37, 685 A.2d at 780 ("[I]t is reasonable to infer that the General Assembly did not intend the Board to have the power to place restrictions on a license as an enforcement mechanism, because it did not so state in Article 2B."). In other words, the specificity with which the legislature prescribed in Article 2B the powers of the local liquor boards, including the sanctions that they may impose, precludes any reasonable inference that the General Assembly impliedly granted the local liquor boards the power to impose sanctions other than those that appear expressly in the statute.

As to Appellee's contention that the Board derives from the rule-making authority conferred by § 9–201 the power to impose sanctions that prohibit licensees to play music, that power is no more impliedly conferred than it is expressly granted by that section. It would be disingenuous to infer from § 9–201 that the General Assembly intended to grant the Board the power to impose the sanction at issue despite that "Article 2B precisely establishes the sanctions available to a liquor board in responding to a licensee's misconduct." *Hollywood Prods.*, 344 Md. at 16, 684 A.2d at 844. To be clear, the specificity and detailed nature of the provisions of Article 2B foreclose the possibility that the General Assembly impliedly authorized the local liquor boards to impose sanctions other than those clearly delineated in Article 2B: monetary fines, license revocation, and license suspension. Because the sanction at issue in this case, the indefinite prohibition of outdoor music, is none of these, we hold that the Board exceeded the scope of its authority. Thus, the sanction is of no effect.

## IV.

The disposition of appeals from local liquor board decisions is more limited than the disposition of appeals from

other administrative agencies.[8] With respect to decisions of the Baltimore County Board of Liquor License Commissioners, our options are even more limited.[9] *See* § 16–101(e)(3) and (e)(4) (governing the disposition of appeals from local liquor board decisions). Unlike in cases involving appeals from the decisions of the nine jurisdictions listed in § 16–101(e)(4)(ii), Baltimore City, Carroll County, Charles County, Frederick County, Harford County, Howard County, Montgomery County, Prince George's County, and St. Mary's County, we may not direct a remand of this case to the Board.

---

**8.** During the April 7, 1992, meeting of the Governor's Commission to Revise Maryland's Administrative Procedure Act ("APA"), Judge John C. Eldridge, then a judge of this Court and a member of the commission, recited the APA language that sets forth the parameters for judicial review of administrative agencies and explained that the language of the statute contained a remand provision that "appl[ies] to all agencies with the exception of the Liquor Boards." *Md. Transp. Auth. v. King*, 369 Md. 274, 298 n. 3, 799 A.2d 1246, 1259–60 n. 3 (2002) (Harrell, J., concurring).

**9.** Section 16–101(e), in effect at this case's inception, provided in pertinent part:

\* \* \*

(3) Unless extended by the court for good cause, the local licensing board's decision made under subsection (a) of this section shall be affirmed, modified, or reversed by the court within 90 days after the record has been filed in the court by the local licensing board.

(4)(i) If the court reverses the action of the local licensing board it shall file with the papers a written statement of the reasons. The court may modify, as well as affirm or reverse, the action of the local licensing board. Costs shall be awarded as in other civil cases.

(ii) In addition to the other powers of the court provided in this article, the court may remand the proceedings to the local licensing board in the following jurisdictions:

1. Baltimore City;
2. Carroll County;
3. Charles County,
4. Frederick County;
5. Harford County;
6. Howard County;
7. Montgomery County;
8. Prince George's County; and
9. St. Mary's County.

In 2009, the General Assembly amended § 16–101(e)(iv)(ii) to include Anne Arundel County. H.B. 1304, 424th Gen. Assem., Reg. Sess. (Md. 2009).

*See Baltimore County Licensed Beverage Ass'n, Inc. v. Kwon,* 135 Md.App. 178, 187, 761 A.2d 1027, 1031 (2000) (noting that under § 16–101(e)(4) a "court may only affirm, reverse, or modify the action of the Baltimore County liquor licensing board, a court can not remand the case to that board"); *see also Paek v. Prince George's County Bd. of License Comm'rs,* 381 Md. 583, 590, 851 A.2d 540, 544 (2004) (citing § 16–101(e)(4)(ii) and explaining that the court could remand the proceedings to Prince George's County Board of License Commissioners); *Bd. of License Comm'rs v. Toye,* 354 Md. 116, 122, 729 A.2d 407, 410 (1999) (noting that in the appeal arising from a decision by the Board of License Commissioners for Charles County the case potentially, pursuant to § 16–101(e)(4)(ii), could be remanded to the local board for a new hearing). Pursuant to Article 2B, a court may only affirm, reverse, or modify the decisions appealed from the Baltimore County Board of Liquor License Commissioners. *See* § 16–101(e)(3), (e)(4)(i).

■ Given that the Board had no authority to prohibit Appellant from playing outdoor music as a sanction for violating §§ 10–401 and 10–403 and Rules 2, 3, and 16 of the Board's Rules and Regulations, the Board's imposition of that sanction was illegal and must be reversed. We therefore reverse the judgment of the Circuit Court affirming that sanction and remand the case to that court with directions to reverse the sanction of indefinite prohibition of outdoor music imposed by the Board.[10]

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE BALTIMORE COUNTY**

---

**10.** Under § 16–101(e)(4)(i), a court may modify "the action of the local licensing board." Appellee made no request, however, for modification of the Board's sanction in the event of a reversal of the judgment of the Circuit Court. We express no opinion as to whether and under what circumstances the Circuit Court, on remand, should exercise its power to modify the sanction that remains.

BOARD OF LIQUOR LICENSE COMMISSIONERS; COSTS TO BE PAID BY APPELLEE.

MURPHY, J., concurs in part, dissents in part, and files opinion.

Concurring & Dissenting Opinion by MURPHY, Judge.

I agree "that the Board had no authority to prohibit Appellant from playing outdoor music as a sanction for violating §§ 10–401 and 10–403 [of Article 2B] and Rules 2, 3, and 16 of the Board's Rules and Regulations," and that "we may not direct a remand of this case to the Board." In my opinion, however, because the Circuit Court does have express statutory authority to *modify* the ruling at issue, this Court should (1) vacate the judgment of the Circuit Court, and (2) remand this case to that court for further proceedings not inconsistent with the majority opinion.