Dear Richard M. Duvall
On behalf of the Wicomico County Board of License Commissioners ("Licensing Board") you have requested our opinion concerning the relationship between the Licensing Board and the Wicomico County Liquor Control Board ("Control Board"). You posed the following questions:
1. Is the retail sale of alcoholic beverages by the Control Board subject to the enforcement authority of the Licensing Board, either generally or specifically under Article 2B, § 15-108.1 and § 15-112(x)(3)?
2. Does the State Alcoholic Beverages Law permit the Licensing Board to fine the Control Board or to revoke or suspend its authority to engage in the retail sale of alcoholic beverages for violation of Article 2B, § 12-108 or other provisions of the Alcoholic Beverages Law?
In our opinion, the answers to your questions are as follows:
1. The State Alcoholic Beverages Law does not give the Licensing Board enforcement authority over the sale of alcoholic beverages by the Control Board.
2. The Licensing Board may not take enforcement action against the Control Board under Article 2B, § 12-108, or other provisions of the Alcoholic Beverages Law.[1] *Page 165 
 I Background
Title 15 of the Alcoholic Beverages Law, Annotated Code of Maryland, Article 2B, provides for two types of liquor boards — boards of license commissioners and liquor control boards. Every county has a board of license commissioners; only a few have liquor control boards. Both types of boards are State entities created to carry out the underlying purpose of the Alcoholic Beverages Law — "to foster and promote temperance." § 1-101(a).[2] Boards of license commissioners license, inspect, and otherwise regulate their licensees — generally, retail sellers of alcoholic beverages. By contrast, liquor control boards are directly involved in the sale of alcoholic beverages. They make wholesale sales of alcoholic beverages and operate local "dispensaries" for retail package sales of certain alcoholic beverages. See generally 94 Opinions ofthe Attorney General 134, 135-39 (2009) (describing various liquor control boards).
A. Wicomico County Board of License Commissioners
The Licensing Board consists of three members appointed by the Governor, with the advice and consent of the Senate, to four-year terms. § 15-101(x). It issues licenses for the retail sale of alcoholic beverages in Wicomico County. § 15-112(a). It may revoke or suspend a license and impose a fine of up to $5,000 for violations of the Alcoholic Beverages Law. §§ 10-401 etseq.; § 16-507(x). It also coordinates the enforcement of all alcoholic beverages licensing laws for the county. § 15-112(x)(3).
To carry out its duties, the Licensing Board may employ an attorney and other staff, including inspectors and clerical personnel. § 15-112(a)(2), (x). It may adopt regulations and conduct inspections of places where licensees are authorized to keep or sell alcoholic beverages. §§ 16-301(a), 16-405. In connection with its hearings and investigations, the Licensing Board may issue summonses and obtain testimony under oath. § 16-410(b). It may also subpoena records from licensed businesses. § 16-410(c). *Page 166 
To apply for a license from the Licensing Board, an individual must complete a form devised by the Comptroller, provide fingerprints and specified information, and swear to the accuracy of the information in the application. §§ 10-103, 10-104. In deciding whether to grant an application, the Licensing Board is to consider various factors, including the public need and desire for the license, the potential effect on existing licensees, the general welfare of the community, and the fitness, moral character, and financial responsibility of the applicant, among other things. § 10-202(a), (k). License fees are paid over to the County government, which is responsible for the salaries and expenses of the Licensing Board. § 10-204(a), (x).
B. Wicomico County Liquor Control Board
The Control Board consists of three members appointed by the Governor, with the advice and consent of the Senate, to two-year terms. § 15-201(b), (c), (e). The General Assembly has granted the Control Board an "absolute monopoly" over the sale of alcoholic beverages in the County, except that it is to make wholesale sales to holders of certain retail licenses in the County.[3] § 15-204(a), (d). The Control Board is authorized to establish and operate its own dispensaries for the retail sale of beer, wine, and liquor, as well as ice and bottled water. § 15-203(a), (e-1).
The Control Board may hire the necessary staff, lease or purchase premises for its dispensaries, [4] purchase inventory from licensed wholesalers and manufacturers, enter into contracts, set prices and hours of operation, refuse to sell to unsuitable customers, and adopt rules and regulations. § 15-205(a)-(e), (g)-(h). The Control Board may borrow money, through the County or directly from a financial institution, to finance its operations. § 15-202. The *Page 167 
Control Board is to keep accurate records of its activities, which are subject to inspection by the Comptroller. § 15-206(a). It is also to provide monthly reports of the results of its operations to the County government and publish those reports in a newspaper. § 15-206(c).
Revenues generated by the dispensaries, after payment of expenses, are to be applied to any debt of the Control Board. § 15-207(g)(2). With the approval of the County government, the Control Board may place a portion of the profits in a reserve fund for working capital and future operating deficits. § 15-207(g)(3). The remaining net profits are to be paid to the County on a quarterly basis. § 15-207(g)(4).
 II Analysis
A. Origin of Licensing Boards and Control Boards
In responding to your questions concerning the legal relationship between the Control Board and the Licensing Board, it is instructive to review briefly the historical developments that led to the creation of licensing boards and control boards as modes of alcoholic beverage regulation. The two types of boards are both progeny of a seminal work on the regulation of alcoholic beverages published nearly 80 years ago. In anticipation of the imminent repeal of nationwide Prohibition[5] by theTwenty-First Amendment, John D. Rockefeller, Jr., commissioned a study as to how states could control consumption of alcoholic beverages when they became legal.[6] R. Fosdick A. Scott,Toward Liquor Control (1933) ("Fosdick and Scott").
The study contained detailed guidelines for alternative modes of regulation. The preferred method of regulation, in Fosdick and *Page 168 
Scott's view, was to establish a public monopoly over the sale of alcoholic beverages for off-premises consumption. Fosdick and Scott at 18-19, 63-93. They cited examples of such monopolies in Canada and the Scandinavian countries. A second alternative was a licensing and regulatory system for controlling private entities involved in the sale of alcoholic beverages.Id. at 18, 35-62. Fosdick and Scott rated a licensing system as inferior to the first alternative because they believed that public control of retail outlets eliminated the profit motive that otherwise would stimulate excessive consumption.Id. at 56-57, 79-80. They contrasted the two methods of regulation as follows:
 It should be observed, first of all, that the objective is the same under both plans, namely, to place the sale of liquor under a series of restrictions devised to curtail excessive consumption. The only difference lies in the method of achieving this object. The licensing system endeavors to establish these controls through negative rules, regulations, conditions, and taxes, imposed from without, upon private enterprise, which necessarily is conducted for personal profit. The State Authority [control board] plan endeavors to impose those controls through positive management from within a public enterprise conducted for the benefit of society.
Id. at 78-79 (emphasis in original). Fosdick and Scott also favored oversight by a statewide authority, particularly with respect to manufacturers and wholesalers.Id. at 41-42, 54-55.
The report, which was published two months before repeal was finally ratified by the states, was favorably received in most quarters. Its proposals became the model for state alcoholic beverages laws passed in the wake of the demise of Prohibition.See Levine, The Birth of American Alcohol Control, Contemporary Drug Problems (Spring 1985). Among those laws was Maryland's Alcoholic Beverages Law. Chapter 2, Special Session, Laws of Maryland 1933.
In Maryland, the General Assembly adopted parts of both methods recommended by Fosdick and Scott. It created control boards with monopoly authority in a few jurisdictions, but relied largely on a licensing and regulatory system overseen by local *Page 169 
licensing boards.[7] However, the predominance of licensing boards over control boards in absolute numbers did not change the nature of the control board in the counties where one was established. It remained a government entity intended as one method of controlling consumption of alcoholic beverages. Indeed, a detailed follow-up survey of state regulation conducted by two staff members involved in the Fosdick and Scott study identified Maryland as a state involving local variation in regulatory approach "including as the most important elective feature a system of county-operated dispensaries." L. Harrison E. Laine, After Repeal: A Study of Liquor Control Administration (1936) at 48 n. 10.[8] We found no indication in the 1936 survey, or in the earlier 1933 report, of any expectation that a licensing board would regulate a control board.
B. Whether the Licensing Board Has Enforcement Authority overthe Control Board
You first ask whether the Licensing Board has enforcement authority over the Control Board generally and specifically pursuant to § 15-108.1 and § 15-112(x)(3).
1. General Authority of Licensing Board
The Alcoholic Beverages Law provides generally that "a person may not sell . . . any alcoholic beverages unless otherwise *Page 170 
provided in this article, or the Tax-General Article." § 1-201(a)(2).[9] The remainder of the law spells out the situations that are "otherwise provided." For example, the Comptroller may issue permits and licenses for certain activities involving sales of alcoholic beverages, sometimes in conjunction with the local licensing board.See, e.g., § 2-101 et seq.; § 6-501 etseq.; § 6-701. Other types of licenses are issued solely by local licensing boards. See, e.g., § 3-101 etseq. (beer licenses), § 4-101 etseq. (wine licenses), § 5-101 et seq. (beer and wine licenses), § 6-101 through § 6-401, § 6-701.1 etseq. (beer, wine and liquor licenses).
Yet another exception to the general prohibition against the sale of alcoholic beverages is the authorization for control boards and their dispensaries to engage in wholesale and retail sales. This authority is distinct from the authority granted by a license; there is no provision for the issuance of a license to a control board or a county dispensary.[10] Cf. 19 Opinions of the AttorneyGeneral 114 (1934) (no authority in State law for Comptroller to issue wholesale liquor license to a control board). Rather, the law directly authorizes control boards to make wholesale sales and to operate retail stores. With respect to retail sales, it states that a liquor control board may "establish and maintain stores to be known as `county liquor dispensaries,' for the sale of any sparkling or fortified wine and any other alcoholic beverages containing more than 14 percent of alcohol by volume, in sealed packages or containers." § 15-203(a)(1). In the case of Wicomico County, § 15-203(e-1) plainly states that the dispensaries operated by the Control Board "may sell chilled beer, nonchilled beer, wine, liquor, ice, and bottled water" and does not condition that authorization on assent by the Licensing Board. SeeRichardson v. State, 175 Md. 216, 200 A. 362 (1938) ("separate provision" for sales by Control Board in Wicomico County not *Page 171 
related to prohibition in Alcoholic Beverages Law against unlicensed sale of whiskey). Thus, this authorization is independent of the licensing regimes created in other portions of the law relating to the Comptroller and licensing boards.
Because the Control Board's activities are inextricably linked to public policy concerning consumption of alcohol, they are governmental functions. Fowler v. Harris,174 Md. 398, 402, 200 A. 825 (1938) (liquor control board "is in no sense a private business or enterprise"); see also
62 Opinions of the Attorney General 45, 50-51 (1977). Accordingly, the Control Board is not subject to the regulatory control that other governmental agencies might exercise over private entities engaged in the sale of alcoholic beverages.See, e.g., 62 Opinions of the AttorneyGeneral 45 (1977) (liquor control boards not subject to municipal zoning); 40 Opinions of the AttorneyGeneral 620 (1955) (liquor control boards not subject to State income tax).[11] Similarly, in our view, the Control Board is not subject to regulation by the Licensing Board.
In your letter requesting this opinion, you noted that the definition of "licensee" in the Alcoholic Beverages Law includes a county liquor control board and a county dispensary. § 1-102(15).[12] *Page 172 
You suggested that the definition effectively renders the Control Board a licensee of the Licensing Board. However, in our view, the definition simply means that the Control Board and its dispensaries may keep and sell alcoholic beverages just as a licensee or permit holder may — i.e., they have the status of a licensee with respect to their authority to sell alcoholic beverages. See
24 Opinions of the Attorney General 126 (1939) (citing definition of "wholesaler" that included a control board in concluding that Montgomery County control board had the status of a licensed wholesaler and therefore had right to make sales to retail dealers). It is not an implicit grant of enforcement authority to licensing boards over control boards. It does not authorize the Licensing Board — or any other agency — to suspend or revoke the authority of the Control Board to sell alcoholic beverages, but simply confirms the authority that the General Assembly itself has granted to the Control Board.[13]
 2. Authority under § 15-108.1
Section 15-108.1 provides simply that the Licensing Board "is a State agency that administers this article and may grant, refuse, revoke, or suspend licenses for the sale of alcoholic beverages." The first clause of this provision indicates that the Licensing Board is a State, as opposed to a County, agency. Given that the Licensing Board is created by State law, its members are appointed by the Governor, and it administers the State Alcoholic Beverages Law, this is not an unexpected conclusion.[14] The second clause of § 15-108.1 *Page 173 
essentially summarizes the Licensing Board's authority over its licensees, which is delineated in other provisions of Article 2B. Nothing in § 15-108.1 pertains to the Control Board, either explicitly or by inference.
Thus, on its face, § 15-108.1 simply summarizes the status and powers of the Licensing Board that are spelled out in detail elsewhere in the Annotated Code of Maryland. Its legislative history confirms that interpretation. This provision was a recent addition to Article 2B. Chapter 145, Laws of Maryland 2006. The Fiscal and Policy Note accompanying the legislation stated that it "clarifies current law." Fiscal and Policy Note to Senate Bill 620 (2006). The bill analysis focused on existing law that already indicated that the Licensing Board was a State agency. Id.
 3. Authority under § 15-112(x)(3)
Section 15-112(x)(3) provides that the Licensing Board "shall coordinate the enforcement of all alcoholic beverageslicensing laws for the county." (emphasis added). Again, this provision seems unremarkable, given that the Licensing Board is charged with granting, suspending, and revoking most alcoholic beverage licenses that affect Wicomico County (Some licenses and permits issued by the Comptroller may also affect the County). The Alcoholic Beverages Law enlists other agencies in the enforcement of its provisions. See, e.g., § 16-401 (providing that various law enforcement officials are to assist in the enforcement of the alcoholic beverages laws and acknowledging the authority of political subdivisions to appropriate funds for that purpose). The Legislature has logically charged the Licensing Board with coordinating enforcement of the licensing provisions.
On the other hand, the statute does not state that the Licensing Board is to coordinate the enforcement of all alcoholic beverages laws in the County or that it has authority over the Control Board as part of its coordination of licensing enforcement. We cannot infer such authority from the statutory language.[15] *Page 174 
C. Whether the Licensing Board May Impose a Sanction Againstthe Control Board
You also ask whether the Licensing Board may impose various sanctions against the Control Board, including revocation or suspension of a license and imposition of a fine, for violations of the Alcoholic Beverages Law. You make specific reference to § 12-108, which concerns sales to underage or visibly intoxicated individuals.
1. Licensing Board's Authority to Impose Sanctions
Suspension or revocation of alcoholic beverage licenses are governed by § 10-401 et seq. The statute describes the various bases on which an "issuing authority" — e.g., the Licensing Board — may suspend or revoke a license. The statute clearly grants an issuing authority the power to suspend or revoke a license for the listed reasons. However, it also makes clear that the licensing board has such authority "with respect to licenses approved by [the licensing board]." § 10-401(a)(1)(ii); seealso § 10-403(a) (after notice and hearing, licensing board may "revoke or suspend any license issued under the provisions ofthis article"). Thus, the Licensing Board has authority to suspend or revoke licenses only of those that it regulates —i.e., those to whom it has issued licenses. The Board's authority to impose fines under § 16-507(x) extends to any violation "that is cause for suspension under the alcoholic beverages law affecting Wicomico County."
On several occasions, the Court of Appeals has alluded to the elaborate detailed regulation wrought by the General Assembly in Article 2B and concluded that close statutory control of this area means that the authority of licensing boards is "more circumscribed than the typical administrative body." Thanner Enterprises, LLC v.Baltimore County, 414 Md. 265, 279-81, 995 A.2d 257 (2010). Accordingly, the power to impose a sanction that is not specifically delegated in the statute will not be implied. Id.
As noted in the previous section of this opinion, nothing in the Alcoholic Beverages Law requires the Control Board to obtain a license from the Licensing Board to carry out its statutory function. Accordingly, there would be no occasion for the Licensing Board to *Page 175 
deny, suspend, or revoke the authority of the Control Board to operate a retail dispensary. That power resides with the General Assembly, which authorized the Control Board to establish dispensaries. Indeed, the framework of the Alcoholic Beverages Law starts from the premise that the Control Board has an "absolute monopoly" over the sale of alcoholic beverages in the County and then provides an exception for holders of certain licenses granted by the Licensing Board. Nor is it possible to infer that the Licensing Board has authority to fine the Control Board for violations of the Alcoholic Beverages Law.
Accordingly, the Licensing Board may not suspend or revoke the "license" of the Control Board. Nor may it assess a fine against the Control Board.
2. Enforcement of § 12-108
You specifically asked about the application of § 12-108 to the Control Board. That section prohibits sales of alcoholic beverages to individuals under the age of 21 or to visibly intoxicated individuals. With respect to Wicomico County, it provides, in relevant part:
 A licensee under the provisions of this article, or any of the licensee's employees, may not sell or furnish any alcoholic beverages at any time to a person under 21 years of age, either for that person's own use or for the use of any other person, or to any person who, at the time of such sale or delivery, is visibly under the influence of any alcoholic beverage.
§ 12-108(c)(2).[16] Somewhat more broadly, the statute also prohibits a licensee, proprietor, "or operator of anyestablishment dispensing alcoholic beverages" from permitting the consumption or possession of alcoholic beverages by an underage individual on its premises. § 12-108(d) (emphasis added). In these provisions the General Assembly has set limits on the retail sale of alcoholic beverages that undoubtedly were meant to apply to all those authorized to make such sales, including dispensaries operated by the Control Board. In our view, just as the inclusion of dispensaries in the definition of *Page 176 
licensee confirms their authorization to sell alcoholic beverages, it also sets the same limit on sales to underage and inebriated patrons. However, these provisions would not be enforced by the Licensing Board but rather by the Control Board itself. Presumably for that purpose, among others, the General Assembly has specifically authorized the Control Board to refuse sales to individual consumers. § 15-205(d).
Various other provisions relating to underage consumption are contained in the Criminal Law Article. See Annotated Code of Maryland, Criminal Law Article, § 10-113 et seq. An employee of the Control Board who violates those provisions concerning underage consumption may be prosecuted for a Code violation in the District Court, but not directly sanctioned by the Licensing Board.
 III Conclusion
In our opinion, the answers to your questions are as follows:
1. The State Alcoholic Beverages Law does not give the License Commissioners enforcement authority over the sale of alcoholic beverages by the Control Board.
2. The License Commissioners may not take enforcement action against the Control Board under Article 2B, § 12-108, or other provisions of the Alcoholic Beverages Law.
Douglas F. Gansler Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] In accordance with our longstanding policy, we requested and received legal memoranda on these questions from counsel for the two agencies. The information and views provided in those memoranda proved helpful in the preparation of this opinion.
[2] Unless otherwise indicated, all statutory references in this opinion are to the Alcoholic Beverages Law found in Article 2B of the Annotated Code of Maryland.
[3] The mark-up on wholesale sales may not exceed 15%. § 15-204(d).
[4] The lease or purchase of locations for the dispensaries is subject to the approval of the County government. § 15-205(g). This provision, as well as others in the Alcoholic Beverages Law, refer to the "county commissioners" of Wicomico County. However, Wicomico County has adopted charter home rule. Pursuant to the Article XI-A, § 3 of the State Constitution, the references to the "county commissioners" would be construed to refer to the current governing body. See 95 Opinions of the AttorneyGeneral 95, 97-98 (2010).
[5] Nationwide Prohibition had been imposed by theEighteenth Amendment to the United States Constitution, which was ratified by the states in January 1919 and went into effect in January 1920. See generally D. Okrent, Last Call (2010).
[6] Rockefeller was a teetotaler and former advocate of Prohibition who later concluded that it was a failed experiment.See Fosdick and Scott at vii-xi (Foreword by John D. Rockefeller, Jr.). He sought to replace it with legal controls on alcoholic beverages that would encourage temperance. Id.
[7] It also established a statewide authority for certain regulatory functions in the Comptroller's Office, including some oversight of control boards.
[8] That 1936 survey continued to describe public monopolies as the preferred method of liquor control. However, the authors expressed the view that the ultimate test was in how well the particular board was run:
 We are convinced that the best of the state monopolies have in them greater potentialities for curbing the evils arising from the use of liquor than have the best of the private-license systems. . . . It should be observed, however, that more is expected of monopolies because their pretensions to beneficial social control are greater. It is not enough, therefore, for a monopoly to be merely as good as a license system in a state having similar conditions; it must be better in order to justify its existence.
Harrison and Laine at 11.
[9] Provisions of the Tax-General Article concern imposition of the alcoholic beverage tax. Annotated Code of Maryland, Tax-General Article, § 5-101 et seq. That law prohibits, among other things, the sale of alcoholic beverages unless the alcoholic beverage tax has been paid; it contains several exceptions to that prohibition.
[10] Indeed, the law contemplates that retail licenses will be issued to individuals. In the case of a collective entity such as partnership, corporation, or limited liability company, the license is to be issued to individuals "who shall assume all responsibilities as individuals and be subject to all of the penalties, conditions and restrictions imposed upon licensees . . ." § 9-101(a). Notably, there is no reference to the issuance of a license to anyone on behalf of a control board.
[11] As noted above, the law does grant some oversight authority to the Comptroller's Office.
[12] The definition states, in pertinent part:
 "License holder" or "licensee" means the holder of any license or permit, issued under the provisions of this article or of any other law of this State, and includes a county liquor control board and a county dispensary.
§ 1-102(15)(i). We note that the definition of "wholesaler" includes a liquor control board and a county wholesale dispensary. § 1-102(27). Also, the definition of "retail dealer" includes a county dispensary. § 1-102(23). The references to control boards and dispensaries in these definitions were added to the law shortly after the Alcoholic Beverages Law was first enacted upon the repeal of Prohibition. Chapter 411, Laws of Maryland 1937; Chapter 775, Laws of Maryland 1939. Although there is no surviving legislative history that indicates why references to dispensaries and control boards were added to these definitions, it seems likely that they were intended to make clear that the control boards and dispensaries were not operating in violation of the new law's broad prohibition against unlicensed sales of alcoholic beverages.See Annotated Code of Maryland, Article 2B, § 2 (1924 1935 Supp.). Notably, these definitions do not relate the status of a control board as "licensee" to any particular license-issuing authority.
[13] We thus agree with the analysis and conclusion of a recent letter of advice of this Office. See Letter of Assistant Attorney General Kathryn M. Rowe to Delegate Rudolph C.Cane (March 3, 2010).
[14] The members of the Licensing Board are designated "local officials" for purposes of the Maryland Public Ethics Law.See Annotated Code of Maryland, State Government Article, § 15-102(y)(2). The Legislature enacted that provision after Attorney General Sachs concluded, in a 1979 opinion, that members of a board of licensing commissioners were officers of the executive branch subject to the then-existing State Code of Ethics. See Chapter 860, Laws of Maryland 1982; 64 Opinions of the Attorney General 151 (1979).
[15] This provision has been part of the Alcoholic Beverages Law since 1977. Chapter 753, Laws of Maryland 1977. There is no mention of the Control Board in the legislative file for the 1977 bill, or any indication that the Legislature intended to grant the Licensing Board authority over any entity other than licensees and applicants. Furthermore, it is noteworthy that the title of the bill was amended to clarify that the Licensing Board's authority pertained to enforcement of "licensing" laws.
[16] Some prohibitions of § 12-108 do not apply in Wicomico County. *Page 177