*426 Dissenting Opinion by
Watts, J.,
which Greene and McDonald, JJ., join
Respectfully, I dissent. I disagree with the Majority’s adoption of the Maryland Department of the Environment (“MDE”)’s interpretation of “premises” as extending to the property line of the commercial park. Rather, I would hold that Kor-Ko, Ltd. (“Kor-Ko”)’s interpretation of “premises” is correct, and that “premises” means the individual suite in which the crematory is to be located, not the area at and inside the boundary, or property line, of the commercial park in which the suite is located. Indeed, although the majority opinion is well written and contains no mistakes in any of the applicable standards or case law, the Majority does not review the plain language of the relevant Code of Maryland Regulation (“COMAR”) and the obvious intent of the regulations, and the Majority does not consider the practical outcome associated with adopting the MDE’s interpretation. With evenhandedness, the Majority expressly acknowledges that “Kor-Ko’s perception that the MDE failed to consider adequately the health of people within the commercial park is understandable.” Maj. Op. at 425, 152 A.3d at 855. Nonetheless, the Majority defers to the MDE’s interpretation of the term “premises.” Maj. Op. at 420-21, 152 A.3d at 853. I disagree with that conclusion because the MDE’s interpretation of the term “premises” is not based on a consistent, long-standing practice, but rather represents a matter of first impression that has wide-ranging practical implications beyond this case.
Because this case involves regulatory interpretation, the principles of regulatory construction are applicable. “The interpretation of an agency rule is governed by the same principles that govern the interpretation of a [sjtatute.” Thanner Enters., LLC v. Balt. Cty., 414 Md. 265, 277, 995 A.2d 257, 264 (2010) (citation, brackets, and internal quotation marks omitted). To that end, the “primary objective is to ascertain and effectuate the intent of the Legislature.” Id. at 277, 995 A.2d at 264 (citation and internal quotation marks omitted). As we have recognized, “[t]he most reliable indicator of the Legislature’s intent is the statute’s plain language as ordinari *427 ly understoodt,]” and “[i]f statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written.” Id. at 277, 995 A.2d at 264 (citations and internal quotation marks omitted). However, if “the language is ambiguous because it gives rise to more than one reasonable interpretation, we must look to other indicia to ascertain the intent of the General Assembly, including the relevant statute’s legislative history, the context of the statute within the broader legislative scheme, and the relative rationality of competing constructions.” Twigg v. State, 447 Md. 1, 24, 133 A.3d 1125, 1139 (2016) (citation and internal quotation marks omitted). “In all cases, when confronted with construing the meaning of a statutory provision, we must provide a reasonable interpretation—one that is consonant with logic and common sense.” Id. at 24,133 A.3d at 1139 (citation omitted).
Code of Maryland Regulation (“COMAR”) 26.11.15.06A(1), concerning the ambient impact requirement for new installations, sources, or premises, provides:
[A] person may not construct, modify, or operate, or cause to be constructed, modified, or operated, any new installation or source without first demonstrating to the satisfaction of the Department using procedures established in this chapter that total allowable emissions from the premises of each toxic air pollutant discharged by the new installation or source will not unreasonably endanger human health.
(Emphasis added). And, COMAR 26.11.15.04A(2) states that emissions from new installations must be “quantified in sufficient detail to determine whether the premises complies with the requirements of [the State’s Air Quality Regulations].” (Emphasis added). COMAR 26.11.01.01B(36) and COMAR 26.11.15.01B(12) define “premises” as “all the installations or other sources that are located on contiguous or adjacent properties and that are under the control of one person or under common control of a group of persons,” No Maryland case has addressed what the term “premises” means when applied in the context of these regulations, and, as the majority opinion recognizes, the MDE’s interpretation of the term *428 “premises” is not a longstanding and consistent interpretation of the term. See Maj. Op. at 419-20 n.14,152 A.3d at 852 n.14. The matter before the Court is one of first impression.
Applying basic principles of regulatory construction, I would conclude that the MDE’s interpretation of the term “premises” conflicts with the plain language of COMAR 26.11.15.06A(1), which clearly refers to “premises” as being the location of the new installation or source from which toxic emissions are discharged. COMAR 26.11.15.06A(1) states, in relevant part, that a person may not construct or operate “any new installation or source without first demonstrating ... that the total allowable emissions from the premises of each toxic air pollutant discharged by the new installation or source will not unreasonably endanger human health.” By tying the new installation or source to the toxic emissions from the premises, as used in COMAR 26.11.15.06A(1), “premises” plainly means the space or unit from where the emissions are coming, ie., the location of the new installation or source; COMAR 26.11.15.06A(1) does not refer to other spaces from which there are no toxic emissions or pollutants, and which are not affected by the new installation or source. It is the installations and sources of toxic emissions that are key to determining what the premises are, not other areas entirely unassociated with the installations and sources of toxic emissions. Indeed, in the context of this case, it would be illogical for “premises” to mean a whole commercial park development where the installation or source of toxic emissions will be the crematory located in only one suite of the commercial park and where the other suites do not contain installations or sources of toxic emissions that would need to be regulated. In other words, the entire commercial park is not an installation or source of toxic emissions, and it strains reason to conclude that the entire commercial park must be the “premises” under COMAR 26.11.15.06A(1).
Moreover, adopting the MDE’s interpretation of the term “premises” as meaning the entire commercial park, extending to the property line, poses two problems. First, the MDE’s interpretation of the term “premises” sets up an unnecessary *429 demarcation between renters and owners that produces an unreasonable result. If Maryland Crematory, LLC (“MC”) owned the suite in the commercial park building in which the crematory is to be located—which it does not—then, according to the MDE’s interpretation of “premises,” the premises would be the suite itself to its property line, and not the entire commercial park to its property line. This is so because the suite, if owned by MC, would be under the “control of one person or under common control of a group of persons[,]” as “premises” is defined by COMAR 26.11.01.01B(36) and CO-MAR 26.11.15.01B(12). In other words, the premises would be limited to the area within the property line that is under the control of one person or under the common control of a group of persons, ie., the suite owned by MC. However, because MC rents the suite in the commercial park building, the MDE interprets “premises” as including the entire commercial park, extended to its property line, which is under the control of a single landlord/business entity, Stone Snyder. Put simply, utilizing the MDE’s interpretation of “premises” sets up an unnecessary and unwarranted distinction between renters of properties and owners of properties. This is obviously an arbitrary and, indeed, nonsensical outcome that should be avoided. See Twigg, 447 Md. at 24, 183 A.3d at 1139 (“In all cases, when confronted with construing the meaning of a statutory provision, we must provide a reasonable interpretation—one that is consonant with logic and common sense.” (Citation omitted)).
Second, the obvious goal or intent of regulations concerning ambient impact and compliance with toxic emissions standards is to safeguard human health. COMAR 26.11.15.06A(1) expressly states that a person may not construct, modify, or operate any new installation or source without first demonstrating that the toxic emissions from the installation or source “will not unreasonably endanger human health.” Holding that the whole commercial park, to its property line, is the premises for purposes of regulatory compliance in this case could render environmental testing less effective and even meaningless in future cases, and undermine the intent of the *430 regulations to protect human health. Indeed, under the MDE’s interpretation of “premises,” there could be a development comprised of rental units, under the “control of one person or under common control of a group of persons[,]” so large that environmental testing would be rendered meaningless if the installation or source of toxic emissions were a single location or suite within the development. Stated otherwise, if the commercial park in this case were larger and included a larger area within its property line, but the crematory remained just in one suite of the commercial park building, the screening requirements would nonetheless remain the same, but the toxic emissions would be measured against the larger area. As such, under the MDE’s interpretation of “premises,” there could be a premises so large that environmental testing would serve no practical purpose in measuring and limiting toxic emissions. Thus, applying the MDE’s interpretation of the term “premises” is simply not logical, and may lead to results that are not consistent with the regulation’s intent to safeguard human health.
Given that the MDE’s interpretation of “premises” is not a longstanding and consistent interpretation that has been tested and applied over time with workable results, there is less of a basis to defer to the MDE’s interpretation in this instance. Accordingly, I would conclude that the plain language of the relevant COMAR, practical considerations, and the need for regulatory compliance to protect human health lead to the conclusion that “premises” means the individual suite in which the crematory is to be located, not the area at and inside the boundary, or property line, of the commercial park in which the suite is located.
For the above reasons, respectfully, I dissent.
Judge Greene and Judge McDonald have authorized me to state that they join in this opinion.